**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| YASMINE LAMAR, | ) | |
| Individually and on behalf of | ) | |
| a class of others similarly situated, | ) | Case No.      1:20-cv-00377 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Honorable Judge Gary S. Feinerman |
| | ) | |
| IQ DATA INTERNATIONAL, INC., | ) | Magistrate Judge Susan E. Cox |
| and DRAPER AND KRAMER, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT DRAPER AND KRAMER, INC.'S MOTION TO DISMISS UNDER
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Draper and Kramer, Inc. ("Draper" or "Defendant"), by and through its undersigned counsel, hereby moves this Court for an order dismissing the Complaint as pleaded against it, with prejudice.

**INTRODUCTION**

Plaintiff Yasmine Lamar ("Plaintiff" or "Lamar") was a tenant in an apartment building managed by Draper. Lamar repeatedly failed to pay her rent. As a result, Draper initiated eviction proceedings and obtained an eviction order against her. Plaintiff alleges that afterwards she received a statement of deposit that included a line item for legal fees Draper incurred in the eviction proceedings. Plaintiff then alleges that Draper referred her entire account to co-Defendant IQ Data International, Inc. ("IQ Data") for collection.

Plaintiff claims that the inclusion of the line item for attorneys' fees is contrary to Illinois law, and brings a single count against Draper under the Illinois Consumer Fraud and Deceptive Practices Act (ICFA). 815 ILCS 505/2, *et seq*.[1] Under the ICFA, Lamar is required to plead and

---

[1] Plaintiff brings a second claim under the Fair Debt Collection Practices Act against only IQ Data.

ultimately prove that she suffered "actual damages," and more specifically, that she suffered a measurable, pecuniary loss proximately caused by the violation. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 334-35 (7th Cir. 2018).

Plaintiff's Complaint should be dismissed for two, independent reasons; First, Lamar has not alleged that she suffered any actual damages, and second, even if she has alleged actual damages, she fails to allege that any of her damages were proximately caused by Draper.

**First**, in an attempt to establish "actual damages," Plaintiff principally alleges that she sent IQ Data a payment of $50 towards her account balance. She also alleges unspecified damage to her credit score, and also that she suffered emotional distress. These allegations do not withstand scrutiny. Lamar never actually made the alleged $50 payment, as shown by the documents Lamar attaches to her Complaint, and therefore incorporated by reference. Rather, the documents show that she provided IQ Data with a post-dated payment and requested that the payment be processed on August 9, 2019. Moreover, her allegations of damage to her credit are entirely speculative, and her alleged emotional harm cannot form the basis for actual damages under the ICFA.

Plaintiff's obscure pleading of the pecuniary loss she suffered is no doubt intentional, as a document Draper received from IQ Data demonstrates that Lamar's post-dated $50 payment was subsequently *declined* due to insufficient funds, as shown below:[2]

```
RAN CREDIT CARD OR DEBIT CARD -- DECLINED
EPPCC:          Name LAMAR,YASMINE
  Error: Declined 33051 Insufficient Funds on Card (51)
  PDate: 08/09/19 Amt:  Acct# ████████████
```

Lamar, therefore, cannot allege a pecuniary loss and has not suffered actual damages under the ICFA. This document should be considered part of Lamar's Complaint, as it is logically and

---

[2] This document is attached to the Declaration of John C. Ochoa as **Exhibit A**.

necessarily tied to the Exhibit attached to Plaintiff's Complaint demonstrating her attempt to make a post-dated payment.[3] Plaintiff should not be permitted to plead actual damages by including a document showing her attempt to make a post-dated payment, then strategically omitting any information about the failed outcome of that attempt—information that she knew or should have known when she filed her lawsuit.

**Second**, and independently, nowhere in Lamar's Complaint does she allege facts showing Draper's alleged wrongful conduct was the proximate cause of her making a $50 "payment," or that any action of Draper proximately caused some speculative damage to her credit score. She does not, and cannot, allege that the inclusion of attorneys' fees in her statement of deposit induced her to attempt to make the $50 payment in light of the debt Lamar owed, which totaled in the thousands, and the majority of which is not at issue in her Complaint.

Draper should not be mired in an expensive and time-consuming class action lawsuit when it is clear from the outset that Plaintiff cannot plead or prove actual damages caused by Draper, and therefore has no actionable ICFA claim. For these reasons, and those that follow, Draper respectfully requests that this Court dismiss Count II alleged against Draper with prejudice, or, alternatively, exercise its discretion to convert this motion to one for judgment under Rule 56, and enter judgment in Draper's favor.

### ALLEGATIONS IN PLAINTIFF'S COMPLAINT

Plaintiff was a tenant at an apartment complex managed by Draper. (Compl. ¶ 18.) Lamar fell behind on her rent, and Defendant initiated eviction proceedings, and obtained an order of eviction. (*Id*. ¶ 21.) Afterwards, Draper sent a deposit statement to Lamar in the amount of

---

[3] To the extent the Court finds that this information is not properly considered on a Rule 12(b)(6) Motion, this Court has the discretion to consider convert this motion to one for summary judgment and enter Judgment in Draper's favor. If the Court finds that Plaintiff's Complaint plausibly alleges actual damages proximately caused by Draper's conduct, Draper requests that the Court convert this motion to one under Rule 56, and enter judgment in its favor.

$3,969.10. (*Id.* ¶ 23.) Contained on the statement of deposit was a line-item for $966.25 in attorneys' fees. (*Id.*) Plaintiff alleges that the pursuit of attorneys fees in an eviction proceeding is contrary to the Chicago Municipal Code. (*Id.* ¶ 20.)

Draper eventually referred Lamar's account to collections. The collection agency, IQ Data, phoned Lamar several times to discuss the amount due on her account. (Compl. ¶ 26.) Plaintiff alleges that she sent IQ Data a payment of $50 against her account balance. (*Id.* ¶ 29.) Lamar further alleges that IQ Data "collected" $50, which included attorneys' fees she incurred, which Plaintiff alleges is demonstrated by the correspondence IQ Data sent to her, which she attaches as Exhibit D to her Complaint. (*Id.* ¶ 33.)

Exhibit D, however, does **not** show that IQ Data collected any amounts from her— Instead, Exhibit D demonstrates that during the course of one of her phone calls with IQ Data, Lamar provided a "post-dated payment" to IQ Data, and asked IQ data to attempt the deposit on August 9, 2019. (Ex. D, Dkt. 1-4.) IQ Data's correspondence confirmed this conversation, and stated that "if your payment is declined/returned for any reason, your payment arrangements will be null and void." (*Id.*) Plaintiff does not attach any documents to her Complaint that show an account balance reflecting that a $50 payment was actually received and deposited, or that the $50 payment was ever deducted from her account. Rather, a subsequent document generated by IQ Data shows that it attempted to complete the transaction on August 9, as Plaintiff requested, but the payment was declined for insufficient funds. (Ochoa Decl. Ex. A.) Therefore, per the correspondence from IQ Data, the attempted payment was "null and void." (Ex. D, Dkt. 1-4.)

Plaintiff also alleges that "on information and belief, IQ Data has furnished Plaintiff's account information, including the unlawful attorney's fees, to one or more credit bureaus, thus damaging Plaintiff's credit." (Compl. ¶ 32.) Finally, Plaintiff alleges she has suffered emotional

distress, annoyance and anxiety as a result of Defendants' alleged unlawful collection efforts. (*Id*. ¶¶ 24, 31, 57.)

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations that are merely legal conclusions, however, are insufficient to survive a Rule 12(b)(6) motion. *Izsak v. Draftkings, Inc.*, Case No. 14-CV-07952, 2016 WL 3227299, at *2 (N.D. Ill. June 13, 2016); *Koval v. City of Chicago*, Case No. 16 CV 7341, 2017 WL 1386181, at *2 (N.D. Ill. Apr. 18, 2017) ("a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations."). In addition, since Plaintiff brings a claim under the ICFA based on alleged deceptive practices, her Complaint must also meet the standards under Rule 9(b). *Haywood*, 887 F.3d at 333.

In ruling on a motion to dismiss, "the district court is entitled to consider exhibits attached to the complaint as part of the pleadings." *Beam v. IPCO Corp*, 838 F.2d 242, 244 (7th Cir. 1988). In addition, the Court may consider documents "incorporated by reference" into the pleadings. *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019); *Resnick v. Schwartz*, No. 17 C 04944, 2018 WL 4191525, at *3 n. 8 (N.D. Ill. Sept. 3, 2018) ("the Court may consider documents incorporated by reference to the pleadings without transforming the motion into one for summary judgment if the documents are referred to in the complaint and are central to the plaintiffs' claim.").

"A plaintiff may plead [her]self out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *In re Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992). Furthermore, it is a "well-settled rule" is that "when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations." *Scott v. Aon Hewitt Fin., Advisors, LLC*, No. 17 C 679, 2018 WL 1384300, at *4 (N.D. Ill. March 19, 2018 ) (citing *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998)).

## ARGUMENT

This Court has two independent bases for granting Draper's Rule 12(b)(6) motion. First, Lamar does not plausibly allege that she suffered a pecuniary loss sufficient to satisfy the actual damages requirement under the ICFA. Second, Plaintiff does not allege any facts that show any of her alleged "damages" were proximately caused by Draper's allegedly wrongful conduct— namely, the inclusion of a line item for legal fees on a statement of deposit.

## I. Lamar's ICFA Claim Fails Because She Does Not Allege She Suffered Any Actual Damages

Plaintiff's allegation that she sent a payment of $50 to IQ Data towards her account is belied by documents attached to her Complaint showing that she did not complete a payment, but rather made a post-dated payment. Plaintiff provides no other allegations suggesting that this transaction was completed, and the she suffered actual damages. And, in fact, as explained in Section II below, documentation from IQ Data demonstrates that Plaintiff's post-dated payment was declined, and plaintiff therefore suffered no pecuniary loss.

Moreover, her allegations "based on information and belief" of "damage to her credit score" are too speculative to support a claim for actual damages. Finally, it is established law in Illinois that emotional harm cannot form the basis for "actual damages" under the ICFA.

6

**A.      Plaintiff does not allege a calculable, "pecuniary loss" necessary to show actual damages under the ICFA**

The ICFA requires that a plaintiff suffer "actual damages," which is an actual, pecuniary loss. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014); *Gagnon v. JPMorgan Chase Bank, N.A.*, 563 B.R. 835, 847–48 (N.D. Ill. 2017) (noting that an actual, pecuniary loss must be plead with particularity under the ICFA); *Bruner v. AllianceOne Receivables Mgmt., Inc.*, No. 15 C 9726, 2017 WL 770993, at *5–6 (N.D. Ill. Feb. 28, 2017) ("Actual damages under the ICFA must follow from 'actual pecuniary loss' and "must be calculable and 'measured by the plaintiff's loss.'") (internal citations omitted).

Notably, "[t]he mere assessment of a fee, without payment, does not constitute an actual pecuniary harm." *Tirado v. Bank of Am., Nat'l Ass'n*, No. 18-CV-5677, 2019 WL 4694990, at *7 (N.D. Ill. Sept. 26, 2019). In *Tirado*, the plaintiff alleged that the defendant improperly assessed inspection fees against her, and that this violated the ICFA. *Id.* Although Tirado alleged that she "paid" the inspection fee, this allegation was contradicted by the plaintiff's exhibits, which showed the full balance still outstanding. *Id.* Based on these facts, the court dismissed plaintiff's ICFA claim, finding that the exhibits attached to her complaint trumped her allegations of payment, and further finding that she failed to allege a pecuniary loss. *Id.*; *see also Miszczyszyn v. JPMorgan Chase Bank, N.A.*, No. 18-CV-3633, 2019 WL 1254912, at *6 (N.D. Ill. Mar. 19, 2019) (dismissing ICFA claim for inspection fees associated with foreclosure, in violation of alleged HUD regulations, where, in part, the assessment of a fee itself was not an actionable damage).

The situation here is almost identical to that in *Tirado*: Lamar alleges that she received a deposit statement from Draper with an alleged improper line item assessment for attorneys' fees. Lamar further alleges that she sent a payment of $50 towards her outstanding balance, and that

7

IQ Data "collected" it. However, Lamar attaches documents to her Complaint that do *not* show that any payment was successfully "collected," or that money was deducted from her bank account, but rather that IQ Data received a "post-dated payment" from Lamar. (*See* Ex. D, Dkt. 1-4.) A post-dated payment is nothing more than a representation that Lamar intended to pay $50 at some point in the future. And, as IQ Data presciently[4] notes in its letter, "if your payment is declined/returned for any reason, your payment arrangements will be null and void." (*Id.*) In addition, the deposit statement attached to her Complaint shows her account balance as $3,969.10—the total principal due, and not some reduced amount based on a successful payment made by Lamar. Like the plaintiff in *Tirado*, Lamar has pleaded herself out of Court. These exhibits attached to her Complaint showing a lack of payment supersede any allegations of payment Plaintiff makes in her Complaint. *Scott*, 2018 WL 1384300, at *4. Thus, Plaintiff fails to allege she suffered a measurable, pecuniary loss as required under the ICFA.

**B.     Plaintiff's speculative allegations of "damage" to her credit are insufficient under the ICFA**

Plaintiff also alleges that "on information and belief, IQ Data has furnished Plaintiff's account information, including the unlawful attorney's fees, to one or more credit bureaus, thus damaging Plaintiff's credit." (Compl. ¶ 32. ) Although Plaintiff doesn't include this as an "actual damage" in her ICFA count (*see* Compl. ¶¶ 52 – 66), it nevertheless is insufficient, standing alone, to constitute actual damages under the ICFA. First, Plaintiff's allegations do not identify a measurable, pecuniary loss, as is required under the ICFA, (*see Bruner*, 2017 WL 770993, at *5–6) but rather some unknown, unmeasurable damage to her credit. Second, her allegations make clear that even Lamar doesn't know if IQ data furnished any information to any credit bureau, as she doesn't identify and credit bureau by name, and instead only makes reference to "one or

---

[4] As explained in Section II below, Lamar's payment was in fact declined, and is thus "null and void."

more credit bureaus." These speculative allegations are insufficient to establish actual damages with particularity, as is required under the ICFA. *Gagnon*, 563 B.R. at 847–48.

Second, even assuming Lamar has sufficiently alleged damage to her credit, courts in similar circumstances have held that such allegations are insufficient to constitute actual damages under the ICFA. *Reeder v. HSBC USA, Inc.*, No. 09-CV-2043, 2009 WL 4788488, at *13–14 (N.D. Ill. Dec. 8, 2009); *Cf. Konieczka v. Wachovia Mortg. Corp.*, No. 11 C 0071, 2012 WL 1049910, at *4 (N.D. Ill. Mar. 28, 2012) (holding that allegations of harm to credit insufficient to show actual damages in relation to a cause of action under RESPA, which, like the ICFA, requires a showing of pecuniary loss.)[5] As the court in *Reeder* noted, an allegation of decrease in credit score, alone, without any "allegation[s] that any third-party user obtained, let alone acted upon, the false information in Plaintiffs' credit reports" in insufficient to plead actual damages under the ICFA. 2009 WL 4788488, at *14. This is because a plaintiff "must allege that he suffered "actual damages . . . flowing from the alleged decrease in credit score such as that he was denied credit, lost credit, had his credit limits lowered, or was required to pay a higher interest rate for credit." *Id*. at *13. Here, Plaintiff fails to plead any actual damages flowing from the alleged damage to her credit, and consequently, her ICFA claim fails.

---

[5] Although the Seventh Circuit in *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575–76 (7th Cir. 2012) suggested that allegations of damage to credit, in conjunction with other harms, were sufficient to make out an "actual damages" claim under the ICFA, that case should be read in context. *Wigod* involved the defendant reneging on a promise to modify plaintiff's home loan under the Home Affordable Mortgage Program. *Id*. at 558. The *Wigod* court noted multiple allegations of damages made by the plaintiff, including that she "incurred costs and fees, lost other opportunities to save her home, suffered a negative impact to her credit, never received a Modification Agreement, and lost her ability to receive incentive payments during the first five years of the modification" *Id.* at 575. And, the case cited in *Wigod* for the proposition that damage to credit, among other harms, constituted actual damages did not consider an allegation of damage to credit in isolation, but rather said that allegations of "damage to [plaintiff's] credit, the 'repossession' of his home, and the inability to "fairly negotiate a plan to stay in [his] home[ ]." . . . .*taken together* . . . are sufficient to state an unfair conduct claim under the ICFA." *Boyd v. U.S. Bank, N.A.*, 787 F. Supp. 2d 747, 754 (N.D. Ill. 2011) (emphasis added). Here, because Plaintiff does not allege an actual, pecuniary loss, her speculative allegation of "damage to credit," standing alone, cannot constitute "actual damages" under the ICFA.

### C. Plaintiff's allegations of emotional harm cannot satisfy the actual damage requirement in the ICFA

Finally, Plaintiff alleges "emotional stress, annoyance, and anxiety" as a result of Defendants' addition of attorneys' fees. (Compl. ¶ 24.) However, these injuries do not constitute actual damages under the ICFA, as "actual damages must arise from 'purely economic injuries." *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 912 (N.D. Ill. 2012) (citing *Cooney v. Chi. Pub. Schs.,* 407 Ill. App. 3d 358 (Ill. App. Ct. 2010))*; see also Witbrod v. Blitt & Gaines, P.C.*, Case No. 14-CV-8176, 2015 WL 1996803, at *3 (N.D. Ill. Apr. 29, 2015) ("Plaintiff's allegations of anxiety, mental anguish, and emotional distress do not, by themselves, constitute damages under the ICFA."). Since Plaintiff cannot allege any actual, pecuniary loss, her allegations of emotional harm cannot save her ICFA claim.[6]

### II. Plaintiff's ICFA Claim Should Be Dismissed or Judgment Should Be Entered in Draper's Favor Because Plaintiff's $50 "Payment" Was Never Credited, And Plaintiff Suffered No Actual Damages

Even if the Court concludes that Plaintiff's allegations of a $50 post-dated payment constitute "actual damages," a document provided by IQ Data shows that Plaintiff's attempted post-dated payment of $50—the same post-dated payment referred to in Exhibit D to Plaintiff's Complaint—was declined for insufficient funds. (Ochoa Decl. Ex. A.) In other words, Plaintiff did not suffer any "pecuniary loss" sufficient to support an ICFA claim.

This Court may consider this document, as the incorporation-by-reference doctrine permits Draper to submit documents to this Court on a motion to dismiss if "[P]laintiff mentions that document in h[er] complaint and it is central to h[er] claim." *Long v. Fed. Home Loan*

---

[6] Plaintiff also alleges, in passing, that she was "placed at risk of paying future sums she didn't owe because the billing and credit reporting included unlawful attorneys fees." Risk of future harm, however, does not constitute "actual damages" under the ICFA. *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 526-27 (N.D. Ill. 2011).

*Mortg. Corp.*, No. 16 CV 03072, 2017 WL 1178531, at \*5 (N.D. Ill. Mar. 30, 2017) (applying incorporation by reference to documents attached to motion to dismiss for ICFA claims) (citing *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.")).

The document should be considered as part of the pleadings here, as it is part and parcel to the allegations in and documents attached to Plaintiff's Complaint: Namely, Lamar's request to make a post-dated payment on August 9, 2019, and IQ Data's acknowledgement of receipt, with the caveat that the payment will be "null and void" if declined. (Compl. Ex. D.) It logically follows that the document showing the outcome of Plaintiff's request should be considered incorporated into her Complaint, as it is central to her claim. Consideration of the document goes to the central purpose of incorporation-by-reference doctrine, which is to prevent plaintiffs from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to [their] complaint a document that proved that [their] claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *McNeal v. J.P. Morgan Chase Bank, N.A.*, No. 16 CV 3115, 2016 WL 6804585, at \*1 (N.D. Ill. Nov. 17, 2016) (considering exhibits to motion to dismiss and granting the motion, stating that "[a] plaintiff cannot thwart consideration of a relevant, central document by failing to attach or reference it."); *Allstate Indem. Co. v. ADT LLC*, 110 F. Supp. 3d 856, 860 (N.D. Ill. 2015) (considering contract attached to motion to dismiss). Consideration of this document cements the conclusion that Plaintiff suffered no actual damages, and that her Complaint must be dismissed, with prejudice.

If the Court declines to incorporate the document showing a lack of payment into the Complaint, it nevertheless has the discretion to convert this motion in to one for summary judgment, and therefore consider the document in its decision making under Federal Rule of Civil Procedure 12(d). *Slabon v. Berryhill*, No. 16 CV 10605, 2017 WL 2592050, at *3 (N.D. Ill. June 15, 2017) (converting motion to dismiss under Rule 12(b)(6) to a motion for summary judgment for a single count, providing plaintiff the opportunity to submit responsive evidentiary material with respect to claim); *Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1010 (N.D. Ill. 2010) (granting converted motion for summary judgment).

If this Court exercises its discretion and coverts this Motion into one for Summary Judgment, Draper requests that judgment be entered in Draper's favor on Plaintiff's ICFA claim. This screenshot is proof positive that Plaintiff suffered no "pecuniary loss" as a result of Draper's conduct. And, as explained in Section I above, Plaintiff's remaining allegations of "actual damage," such as damage to credit and emotional harm, are insufficient to make out an ICFA claim.

### III. Lamar's ICFA Claim Against Draper Fails Because She Fails To Allege that Draper's Conduct Proximately Caused Her Actual Damages

Plaintiff's ICFA claim fails for a second, independent reason: Nowhere does Plaintiff allege that she made a $50 payment *because of* Draper's alleged pursuit of legal fees. In addition, Lamar does not, and cannot allege, that the supposed damage to her credit score was proximately caused by Draper's alleged wrongful conduct.

The ICFA requires Plaintiff to allege that her damages were proximately caused by Draper's alleged wrongful conduct. *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 160 (Ill. 2002); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (noting the ICFA requires "that actual damages [are] proximately caused by the deception."); *see*, *e.g.*, *Haywood v. Massage*

*Envy Franchising, LLC*, 887 F.3d 329, 334-35 (7th Cir. 2018) (affirming dismissal where there were no allegations supporting proximate causation where the "failure to cite a specific deceptive representation that caused her to pay for something she did not receive is particularly problematic in light of Rule 9(b)'s heightened standard.").

In this case, the basis for Lamar's claim against Draper is that it improperly included legal fees in the deposit statement it sent to her for collection. Aside from a threadbare, conclusory allegation that "Plaintiff paid $50 on her account as a direct and proximate result of Defendants' unlawful collection efforts," she makes no allegations that she was somehow induced to make a $50 payment *because of* Draper's inclusion of attorneys' fees on her deposit statement. To the contrary, she makes ***no*** allegations whatsoever linking her decision to send her payment with any ***wrongful*** conduct of Draper. This is inadequate under Rule 8, and certainly fails to meet Rule 9(b). Accordingly, Plaintiff has failed to allege proximate causation, and as a result Count II fails. *See Schiesser v. Ford Motor Co.*, No. 16 C 730, 2017 WL 1283499, at *6 (N.D. Ill. Apr. 6, 2017) (dismissing ICFA claim with prejudice where plaintiff did not specify what representations or omissions induced the purchase) (collecting cases); *cf. Eromon v. Grand Auto Sales, Inc.*, 351 F. Supp. 2d 825, 828 (N.D. Ill. 2004) (finding proximate cause was inadequately plead under the ICFA, in part, where plaintiff was not damaged by decision to submit loan payments exceeding the monthly amount he was otherwise obligated to re-pay eventually).

Likewise with Plaintiff's allegation of damage to her credit; Lamar doesn't even attempt to allege that this harm was caused by Draper's inclusion of attorneys' fees on a statement of deposit. Instead, Plaintiff's allegations state that such damage was caused by IQ Data's supposed furnishing of Lamar's account information to "one or more credit bureaus." (Compl. ¶ 32.)

Moreover, Draper's referral of the account to IQ Data, and IQ Data's alleged furnishing of account information to a credit bureau, would have occurred regardless of whether attorneys' fees were included on Lamar's statement of deposit, as Plaintiff never came close to paying off the amount of debt she owed, the majority of which Plaintiff does not challenge in this lawsuit. Thus, this alleged harm (even assuming it is sufficient under the ICFA) cannot form the basis of an ICFA claim against Draper, as Plaintiff does not, and cannot, allege that such harm was proximately caused by Draper's alleged wrongful conduct.[7]

**WHEREFORE**, Draper respectfully requests that this Court enter an order granting its Rule 12(b)(6) Motion to Dismiss and dismissing Plaintiff's Count II, the only Count against it, with prejudice. In the alternative, Draper requests that this Court convert this motion to for a motion for summary judgment under Federal Rule of Civil Procedure 56 and enter judgment in favor of Draper.

Respectfully submitted,

By: /s/ John C. Ochoa
Attorney for Defendant,
Draper and Kramer, Inc.

John C. Ochoa ARDC # 6302680
SMITHAMUNDSEN LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200
jochoa@salawus.com

---

[7] Because, as explained in Section I above, emotional damages do not constitute "actual damages" under the ICFA, it is immaterial if such harm was proximately caused by any actions of Draper.

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 25, 2020, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

[x]    Pursuant to 28 USC Section 1746(2), I certify under penalty of perjury that the foregoing is true and correct. Executed on: June 25, 2020.

/s/ John C. Ochoa