**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| YASMINE LAMAR, | ) | |
| Individually and on behalf of | ) | |
| a class of others similarly situated, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | COMPLAINT |
| | ) | |
| vs. | ) | |
| | ) | CLASS ACTION |
| IQ DATA INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

**FIRST AMENDED COMPLAINT—CLASS ACTION**

**INTRODUCTION**

1.      Plaintiff, Yasmine Lamar, brings this action to secure redress from unlawful collection practices engaged in by Defendant IQ Data International, Inc. ("IQ Data") Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") In brief, Defendant seeks to collect and has collected from evicted tenants attorneys' fees allegedly incurred by landlords of residential property in Chicago in connection with evictions, even though a Chicago ordinance explicitly prohibits landlords from imposing such fees. In addition, defendant IQ Data fails to give these former tenants notice of their rights to dispute the debt as required by federal law.

2.      The FDCPA prohibits unfair collection methods, the harassment of debtors, seeking to collect amounts not lawfully owed, and the use of deceptive statements in connection with debt collection. It also requires that debt collectors give debtors certain information regarding their rights within specified time frames. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

1

3. Courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly" and that this "intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC,* 567 F.Supp.2d 1035, 1042 (N.D. Ill. 2008).

4. Plaintiff now seeks redress for herself and to enforce the policies which are expressed through the FDCPA, which encourages consumers to act as "private attorneys general to enforce the public policies and protect the civil rights expressed therein." *Crabill v. Trans Union, LLC,* 259 F.3d 662, 666 (7th Cir. 2001).

## VENUE AND JURISDICTION

5. This Court has jurisdiction over Plaintiff's FDCPA claims under 28 U.S.C. §1331.

6. Venue and personal jurisdiction in this District are proper as to IQ Data because IQ Data's collection communications were received by Plaintiff within this District.

## PARTIES

7. Plaintiff Yasmine Lamar is an individual residing in Chicago, Illinois.

8. Defendant IQ Data International, Inc. is a Washington Corporation with principal offices at 21222 30th Dr. SE, Suite 120, Bothell, Washington 98021.

9. IQ Data regularly uses the mails and telephone system to attempt to collect and to collect defaulted consumer debts allegedly owed to others. It provides debt collection services. Specifically, IQ Data regularly conducts collection of past due residential rent and related charges allegedly owed in connection with a residential lease.

10. IQ Data is a debt collector as defined in the FDCPA.

.

## FACTS

2

11.     IQ Data has been attempting to collect from Plaintiff an alleged debt on behalf of Draper and Kramer, Inc. ("Draper and Kramer"), a property management company, which was incurred, if at all, for personal, family or household purposes and not for business purposes, on a rental agreement for a dwelling unit located within the City of Chicago.

12.     Plaintiff resided in Lake Meadows Phase I apartment complex, unit 1205 at 3445 S. Rhodes Avenue, Chicago, Illinois (hereinafter "the rental unit') from October 2018 to August 2019.

13.     During her tenancy, Plaintiff's roommate unexpectedly abandoned their shared apartment, managed by Draper and Kramer, making it difficult for Plaintiff to keep up with rent, and she fell behind in her payments.

14.     Plaintiff's lease provided for recovery of attorney's fees by the landlord, but only where allowed by law. (Exhibit A).

15.     Under Chicago Mun. Code Ch. 5-12-180, it is unlawful for a landlord to charge a tenant attorney's fees in connection with an eviction action.[1]

16.     On August 8, 2018, Draper and Kramer, as managing agent for Lake Meadows Phase I Limited Partnership, secured an eviction order in an eviction action against Plaintiff on the rental unit.

17.     In doing so, Draper and Kramer specifically declined to pursue attorney's fees on the eviction order form, likely because it knew the pursuit of such fees under these circumstances are illegal in Chicago (Exhibit B).

---

[1] The Eviction Act (735 ILCS 5/9-101 et seq.) was amended effective January 1, 2018 in order to simplify the statute governing Illinois evictions by changing the previous language, "forcible entry and detainer actions," to "eviction actions." Thus, though the language did not change in Chicago Mun. Code Ch. 5-12-180, "forcible entry and detainer actions" are tantamount to eviction actions as defined in state law.

18.    Draper and Kramer later sent Plaintiff an accounting notice dated August 30, 2018 on behalf of Lake Meadows Phase I, stating a balance due of $3,969.10 on the rental unit. (Exhibit C). The accounting notice specifically listed a legal fee of $966.25 which included unlawful attorney's fees.

19.    Plaintiff suffered confusion, emotional distress, annoyance and anxiety as a result of the addition of the attorney fees..

20.    On information and belief, when Plaintiff did not send a payment, Draper and Kramer referred the account to IQ Data for collection.

21.    IQ Data then called Plaintiff's cellular phone on numerous occasions between July of 2019 and the time of this filing, seeking to collect the alleged debt.

22.    Neither during the initial communication from IQ Data nor within five days thereof did IQ Data  provide a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector, nor a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

23.    If Plaintiff had known she had the right to do so, she would have requested validation and disputed the attorney fees.

24.    Plaintiff sent IQ Data a check in the sum of $50 on her account, but unfortunately by the time it was cashed, it was rejected as NSF.

25. This check was acknowledged, but not credited, in a written communication dated August 2, 2019 that Defendant IQ Data sent Plaintiff, stating a balance due of $4,153.42, including $3969.10 in principal and $184.32 in interest. A copy is attached as Exhibit D.

26. The "Principal Due" included unlawful attorney's fees, as itemized on the previous notice from Draper and Kramer. Plaintiff again suffered emotional distress, annoyance, confusion, and anxiety as a result of the debt collector's inclusion of a claim for the attorney fees.

27. On information and belief, IQ Data has furnished Plaintiff's account information, including the unlawful attorney's fees, to one or more credit bureaus, thus damaging Plaintiff's credit.

28. IQ Data has sought to collect and collected attorney's fees allegedly incurred by Plaintiff's landlord in connection with an eviction action in Chicago in phone calls, when it sent Exhibit D to Plaintiff and when it furnished information to one or more credit bureaus.

29. Plaintiff was placed at risk of paying further sums she didn't owe because the billing and credit reporting included unlawful attorney's fees.

## COUNT I—Violation of the Fair Debt Collection Practices Act by IQ Data

30. Plaintiff incorporates by reference the foregoing allegations of the Complaint.

31. 28 U.S.C. § 1692f(1) provides that a debt collector may not "use unfair or unconscionable means to collect or attempt to collect any debt," including collecting "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

32. 28 U.S.C. §1692e provides that a debt collector may not use "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

33.   28 U.S.C. §1692e(2)  provides that it is a violation of that section to make a "false

representation of . . . the character, amount, or legal status of any debt."

34.   28 U.S.C. §1692e(10) provides that it is a violation of that section to "use any false

representation or deceptive means to collect or attempt to collect any debt or to obtain

information concerning a consumer."

35.   The written communication attached as Exhibit D and telephonic communications

received by Plaintiff from I.Q. Data violate 15 U.S.C. §§ 1692f, 1692f(1), 1692e, 1692e(2), and

1692e(10), in that they seek to collect attorney fees allegedly incurred in connection with an

eviction action that IQ Data is not entitled to collect either by law or contract, and they falsely

and misleadingly represented that plaintiff owes legal fees that include attorney fees incurred in

connection with an eviction action

36.   15 U.S.C. § 1692g(a) provides:

> Within five days after the initial communication with a consumer in connection with
> the collection of any debt, a debt collector shall, unless the following information is
> contained in the initial communication or the consumer has paid the debt, send the
> consumer a written notice containing--
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice,
> disputes the validity of the debt, or any portion thereof, the debt will be assumed to be
> valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the
> thirty-day period that the debt, or any portion thereof, is disputed, the debt collector
> will obtain verification of the debt or a copy of a judgment against the consumer and
> a copy of such verification or judgment will be mailed to the consumer by the debt
> collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period,
> the debt collector will provide the consumer with the name and address of the original
> creditor, if different from the current creditor.

37.   To date, Defendant IQ Data still has not provided Plaintiff any such notice.

38.     On information and belief, IQ Data uniformly fails to provide such notice to former residential tenants in Chicago from whom it attempts to collect alleged debts.

### CLASS ALLEGATIONS—FDCPA

39.     Plaintiff brings this claim on behalf of a class and subclass, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

40.     The class consists of (a) all individuals evicted from residential premises in Chicago (b) to whom IQ Data sent a written communication (c) at any time during a period beginning one year year prior to the filing of this action and ending 21 days after the filing of this action and (d) where IQ Data did not include notice that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector and/or did not include notice that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector and/or did not include a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

41.     The subclass consists of (a) all individuals (b) to whom IQ Data sent a written communication (c) at any time during a period beginning one year prior to the filing of this action and ending 21 days after the filing of this action and (d) where IQ Data sought to collect an amount which included attorney's fees in connection with an eviction action related to a rental agreement for a dwelling unit located within the City of Chicago; (e) in which attorneys' fees had not been awarded by the court.

42. Excluded from the class and subclass are (1) current and former officers, directors, employees, and agents of either defendant and their subsidiaries, parents, and affiliates; (2) persons who have released defendants for the claims asserted; (3) the judge to which this case is assigned and his or her staff; (4) persons who at the time of their eviction resided in any of the following: (a) Owner-occupied buildings containing six units or less; (b) Dwelling units in hotels, motels, inns, bed- and-breakfast establishments, rooming houses and boardinghouses (c) Housing accommodations in any hospital, convent, monastery, extended care facility, asylum or not-for-profit home for the aged, temporary overnight shelter, transitional shelter, or in a dormitory owned and operated by an elementary school, high school or institution of higher learning; student housing accommodations; (d) A dwelling unit that is occupied by a purchaser pursuant to a real estate purchase contract prior to the transfer of title to such property to such purchaser, or by a seller of property pursuant to a real estate purchase contract subsequent to the transfer of title from such seller; (e) A dwelling unit occupied by an employee of a landlord whose right to occupancy is conditional upon employment in or about the premises; and (f) A dwelling unit in a cooperative.

43. On information and belief, the class and subclass are each so numerous that joinder of all members is not practicable.

44. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question for the class is whether IQ Data's failure to provide the information specified above violates 1692g and as to the subclass is whether IQ Data's communications seeking to collect and its collecting attorney fees allegedly incurred in connection with eviction actions on rental agreements for dwellings units located within the City of Chicago violate the FDCPA.

45.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class and federal litigation.

46.     A class action is superior for the fair and efficient adjudication of this matter, in that individual actions are not economically feasible, members of the class and subclass are likely to be unaware of their rights, and Congress intended class actions to be the primary enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff, the class and subclass members and against Defendant for:

    a.  Statutory damages;

    b.  Actual damages or restitution for payments of requested attorney fees by class members;

    c.  Punitive damages;

    d.  Attorney's fees, litigation expenses, and costs of suit;

    e.  Such other relief as this Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

*/s/ Mary Frances Charlton*
Mary Frances Charlton
Patricia Nix-Hodes
Arturo Hernandez
Chicago Coalition for the Homeless, Law Project
70 E. Lake St. Ste. 720
Chicago, IL 60601
312-641-4140
maryfrances@chicagohomeless.org
patricia@chicagohomeless.org
arturo@chicagohomeless.org

9

*/s/ Charles Delbaum*
Charles Delbaum
Andrea Bopp Stark
National Consumer Law Center
7 Winthrop Square
Boston, MA 02110-1245
617-542-8010
cdelbaum@nclc.org
astark@nclc.org

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2020, I electronically filed the foregoing First Amended Complaint with the Clerk of Court by using the CM/ECF system, which sent notice of such filing to all parties.

*s/ Mary Frances Charlton*
Mary Frances Charlton