# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| YASMINE LAMAR,<br>Individually and on behalf of<br> a class of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>IQ DATA INTERNATIONAL, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br><br>COMPLAINT<br><br><br>CLASS ACTION<br><br><br>JURY TRIAL DEMANDED |

### FIRST AMENDED COMPLAINT—CLASS ACTION

### INTRODUCTION

1.      Plaintiff, Yasmine Lamar, brings this action to secure redress from unlawful collection practices engaged in by Defendant IQ Data International, Inc. ("IQ Data") Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") In brief, Defendant seeks to collect and has collected from evicted tenants attorneys' fees allegedly incurred by landlords of residential property in Chicago in connection with evictions, even though a Chicago ordinance explicitly prohibits landlords from imposing such fees. In addition, defendant IQ Data fails to give these former tenants notice of their rights to dispute the debt as required by federal law.

2.      The FDCPA prohibits unfair collection methods, the harassment of debtors, seeking to collect amounts not lawfully owed, and the use of deceptive statements in connection with debt collection. It also requires that debt collectors give debtors certain information regarding their rights within specified time frames. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

1

3.      Courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly" and that this "intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC,* 567 F.Supp.2d 1035, 1042 (N.D. Ill. 2008).

4.      Plaintiff now seeks redress for herself and to enforce the policies which are expressed through the FDCPA, which encourages consumers to act as "private attorneys general to enforce the public policies and protect the civil rights expressed therein." *Crabill v. Trans Union, LLC,* 259 F.3d 662, 666 (7th Cir. 2001).

## VENUE AND JURISDICTION

5.      This Court has jurisdiction over Plaintiff's FDCPA claims under 28 U.S.C. §1331.

6.      Venue and personal jurisdiction in this District are proper as to IQ Data because IQ Data's collection communications were received by Plaintiff within this District.

## PARTIES

7.      Plaintiff Yasmine Lamar is an individual residing in Chicago, Illinois.

8.      Defendant IQ Data International, Inc. is a Washington Corporation with principal offices at 21222 30th Dr. SE, Suite 120, Bothell, Washington 98021.

9.      IQ Data regularly uses the mails and telephone system to attempt to collect and to collect defaulted consumer debts allegedly owed to others. It provides debt collection services. Specifically, IQ Data regularly conducts collection of past due residential rent and related charges allegedly owed in connection with a residential lease.

10.     IQ Data is a debt collector as defined in the FDCPA.

.

## FACTS

11. IQ Data has been attempting to collect from Plaintiff an alleged debt on behalf of Draper and Kramer, Inc. ("Draper and Kramer"), a property management company, which was incurred, if at all, for personal, family or household purposes and not for business purposes, on a rental agreement for a dwelling unit located within the City of Chicago.

12. Plaintiff resided in Lake Meadows Phase I apartment complex, unit 1205 at 3445 S. Rhodes Avenue, Chicago, Illinois (hereinafter "the rental unit') from October 2018 to August 2019.

13. During her tenancy, Plaintiff's roommate unexpectedly abandoned their shared apartment, managed by Draper and Kramer, making it difficult for Plaintiff to keep up with rent, and she fell behind in her payments.

14. Plaintiff's lease provided for recovery of attorney's fees by the landlord, but only where allowed by law. (Exhibit A).

15. Under Chicago Mun. Code Ch. 5-12-180, it is unlawful for a landlord to charge a tenant attorney's fees in connection with an eviction action.[1]

16. On August 8, 2018, Draper and Kramer, as managing agent for Lake Meadows Phase I Limited Partnership, secured an eviction order in an eviction action against Plaintiff on the rental unit.

17. In doing so, Draper and Kramer specifically declined to pursue attorney's fees on the eviction order form, likely because it knew the pursuit of such fees under these circumstances are illegal in Chicago (Exhibit B).

---

[1] The Eviction Act (735 ILCS 5/9-101 et seq.) was amended effective January 1, 2018 in order to simplify the statute governing Illinois evictions by changing the previous language, "forcible entry and detainer actions," to "eviction actions." Thus, though the language did not change in Chicago Mun. Code Ch. 5-12-180, "forcible entry and detainer actions" are tantamount to eviction actions as defined in state law.

18.     Draper and Kramer later sent Plaintiff an accounting notice dated August 30, 2018 on behalf of Lake Meadows Phase I, stating a balance due of $3,969.10 on the rental unit. (Exhibit C). The accounting notice specifically listed a legal fee of $966.25 which included unlawful attorney's fees.

19.     Plaintiff suffered confusion, emotional distress, annoyance and anxiety as a result of the addition of the attorney fees..

20.     On information and belief, when Plaintiff did not send a payment, Draper and Kramer referred the account to IQ Data for collection.

21.     IQ Data then called Plaintiff's cellular phone on numerous occasions between July of 2019 and the time of this filing, seeking to collect the alleged debt.

22.     Neither during the initial communication from IQ Data nor within five days thereof did IQ Data  provide a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector, nor a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

23.     If Plaintiff had known she had the right to do so, she would have requested validation and disputed the attorney fees.

24.     Plaintiff sent IQ Data a check in the sum of $50 on her account, but unfortunately by the time it was cashed, it was rejected as NSF.

4

25.     This check was acknowledged, but not credited, in a written communication dated August 2, 2019 that Defendant IQ Data sent Plaintiff, stating a balance due of $4,153.42, including $3969.10 in principal and $184.32 in interest. A copy is attached as Exhibit D.

26.     The "Principal Due" included unlawful attorney's fees, as itemized on the previous notice from Draper and Kramer. Plaintiff again suffered emotional distress, annoyance, confusion, and anxiety as a result of the debt collector's inclusion of a claim for the attorney fees.

27.     On information and belief, IQ Data has furnished Plaintiff's account information, including the unlawful attorney's fees, to one or more credit bureaus, thus damaging Plaintiff's credit.

28.     IQ Data has sought to collect and collected attorney's fees allegedly incurred by Plaintiff's landlord in connection with an eviction action in Chicago in phone calls, when it sent Exhibit D to Plaintiff and when it furnished information to one or more credit bureaus.

29.     Plaintiff was placed at risk of paying further sums she didn't owe because the billing and credit reporting included unlawful attorney's fees.

### COUNT I—Violation of the Fair Debt Collection Practices Act by IQ Data

30.     Plaintiff incorporates by reference the foregoing allegations of the Complaint.

31.     28 U.S.C. § 1692f(1) provides that a debt collector may not "use unfair or unconscionable means to collect or attempt to collect any debt," including collecting "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

32.     28 U.S.C. §1692e provides that a debt collector may not use "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

33. 28 U.S.C. §1692e(2) provides that it is a violation of that section to make a "false representation of . . . the character, amount, or legal status of any debt."

34. 28 U.S.C. §1692e(10) provides that it is a violation of that section to "use any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

35. The written communication attached as Exhibit D and telephonic communications received by Plaintiff from I.Q. Data violate 15 U.S.C. §§ 1692f, 1692f(1), 1692e, 1692e(2), and 1692e(10), in that they seek to collect attorney fees allegedly incurred in connection with an eviction action that IQ Data is not entitled to collect either by law or contract, and they falsely and misleadingly represented that plaintiff owes legal fees that include attorney fees incurred in connection with an eviction action

36. 15 U.S.C. § 1692g(a) provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

37. To date, Defendant IQ Data still has not provided Plaintiff any such notice.

38.     On information and belief, IQ Data uniformly fails to provide such notice to former residential tenants in Chicago from whom it attempts to collect alleged debts.

## CLASS ALLEGATIONS—FDCPA

39.     Plaintiff brings this claim on behalf of a class and subclass, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

40.     The class consists of (a) all individuals evicted from residential premises in Chicago (b) to whom IQ Data sent a written communication (c) at any time during a period beginning one year year prior to the filing of this action and ending 21 days after the filing of this action and (d) where IQ Data did not include notice that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector and/or did not include notice that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector and/or did not include a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

41.     The subclass consists of (a) all individuals (b) to whom IQ Data sent a written communication (c) at any time during a period beginning one year prior to the filing of this action and ending 21 days after the filing of this action and (d) where IQ Data sought to collect an amount which included attorney's fees in connection with an eviction action related to a rental agreement for a dwelling unit located within the City of Chicago; (e) in which attorneys' fees had not been awarded by the court.

42.     Excluded from the class and subclass are (1) current and former officers, directors, employees, and agents of either defendant and their subsidiaries, parents, and affiliates; (2) persons who have released defendants for the claims asserted; (3) the judge to which this case is assigned and his or her staff; (4) persons who at the time of their eviction resided in any of the following: (a) Owner-occupied buildings containing six units or less; (b) Dwelling units in hotels, motels, inns, bed- and-breakfast establishments, rooming houses and boardinghouses (c) Housing accommodations in any hospital, convent, monastery, extended care facility, asylum or not-for-profit home for the aged, temporary overnight shelter, transitional shelter, or in a dormitory owned and operated by an elementary school, high school or institution of higher learning; student housing accommodations; (d) A dwelling unit that is occupied by a purchaser pursuant to a real estate purchase contract prior to the transfer of title to such property to such purchaser, or by a seller of property pursuant to a real estate purchase contract subsequent to the transfer of title from such seller; (e) A dwelling unit occupied by an employee of a landlord whose right to occupancy is conditional upon employment in or about the premises; and (f) A dwelling unit in a cooperative.

43.     On information and belief, the class and subclass are each so numerous that joinder of all members is not practicable.

44.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question for the class is whether IQ Data's failure to provide the information specified above violates 1692g and as to the subclass is whether IQ Data's communications seeking to collect and its collecting attorney fees allegedly incurred in connection with eviction actions on rental agreements for dwellings units located within the City of Chicago violate the FDCPA.

45.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class and federal litigation.

46.     A class action is superior for the fair and efficient adjudication of this matter, in that individual actions are not economically feasible, members of the class and subclass are likely to be unaware of their rights, and Congress intended class actions to be the primary enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff, the class and subclass members and against Defendant for:

    a.   Statutory damages;

    b.   Actual damages or restitution for payments of requested attorney fees by class members;

    c.   Punitive damages;

    d.   Attorney's fees, litigation expenses, and costs of suit;

    e.   Such other relief as this Court deems proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

*/s/ Mary Frances Charlton*
Mary Frances Charlton
Patricia Nix-Hodes
Arturo Hernandez
Chicago Coalition for the Homeless, Law Project
70 E. Lake St. Ste. 720
Chicago, IL 60601
312-641-4140
maryfrances@chicagohomeless.org
patricia@chicagohomeless.org
arturo@chicagohomeless.org

9

/s/ Charles Delbaum
Charles Delbaum
Andrea Bopp Stark
National Consumer Law Center
7 Winthrop Square
Boston, MA 02110-1245
617-542-8010
cdelbaum@nclc.org
astark@nclc.org

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2020, I electronically filed the foregoing First Amended Complaint with the Clerk of Court by using the CM/ECF system, which sent notice of such filing to all parties.

s/ Mary Frances Charlton
Mary Frances Charlton

10

# Chicago Apartment Lease Contract

Date of Lease Contract: **November 3, 2017**
(when the Lease Contract is filled out)

*This is a binding document. Read carefully before signing.*

## Moving In — General Information

**1. PARTIES.** This Lease Contract is between *you*, the resident(s) *(list all people signing the Lease Contract):*
**Yasmine Teersah Lamar, Ryan N Smith**

and *us*, the owner:
**Lake Meadows Phase I and II L.P., an Illinois Ltd. Partnership**

*(name of apartment community or title holder).* You've agreed to rent Apartment No. **5-1205** , at **3445 S RHODES AVE UNIT 1205**
*(street address)*
in **Chicago** *(city)*, Illinois, **60616** *(zip code)* for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest, agents, or assigns). If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

### IDENTIFICATION OF OWNER AND AGENTS

**Owner or Authorized Management Agent:**

**By Draper and Kramer, Inc, as agent**

NAME

**55 East Monroe Street**
ADDRESS

**Chicago, IL 60603**          **(312)346-8600**
CITY                           TELEPHONE NUMBER

**Person Authorized to Act on Behalf of Owner for Purpose of Service of Process and Receipting for Notices:**

**Lake Meadows Apartments**
NAME

**500 E. 33rd Street**
ADDRESS

**Chicago, IL 60616**          **(312) 842-7333**
CITY                           TELEPHONE NUMBER

**2. OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract):*

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than **7** consecutive days without our prior written consent, and no more than twice that many days in any one month. *If the previous space isn't filled in, two days per month is the limit.*

**3. LEASE TERM.** The initial term of the Lease Contract begins on the **31st** day of **October** , **2017** , and ends at midnight the **30th** day of **April** , **2019** *(year)*.

**This Lease Contract will automatically renew month-to-month unless either party gives at least __60__ days (not less than 30 days and not more than 90 days) written notice of termination or intent to move-out as required by paragraph 42.**

*If the number of days isn't filled in, at least 30 days notice is required.*

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ **0.00** , due on or before the date this Lease Contract is signed.

Your security deposit will be kept in a segregated account at *(name and address of financial institution)*:

**5. KEYS AND FURNITURE.** You will be provided _____ apartment key(s), _____ mailbox key(s), and _____ other access devices for _____ . Your apartment will be *[check one]:*
☐ furnished or ☒ unfurnished.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ **730.00** per month for rent, payable in advance and without demand on or before the first day of every month:

---

☒ at the on-site manager's office, or
☒ at our online payment site, or
☐ at _____ .

# Concession Granted:

**765.00**

Prorated rent of $ **23.55** is due for the remainder of *[check one]:*
☒ 1st month or ☐ 2nd month, on **October 31** , **2017** . *Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute or ordinance.* We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. The monthly rent shall be increased $10.00 per month for the first $500.00 in monthly rent plus five (5%) percent per month for any amount in excess of $500.00 in monthly rent if paid after the fifth of the month. Rent shall be considered received, if mailed on the date of receipt. You will also pay a charge of $ **75.00** for each returned check or rejected electronic payment as additional rent.

**7. UTILITIES.** We'll pay for the following items, if checked:
☐ water    ☒ gas    ☐ electricity ☐ master antenna.
☐ wastewater ☐ trash ☐ cable TV ☐ other _____

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected for any reason—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-powered lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance. If utilities are prorated by an allocation formula, we will follow the procedures of the applicable law.

**8. INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

We urge you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

Additionally, you are *[check one]* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable breach of this Lease Contract and may result in the termination of your tenancy and eviction and/or any other remedies as provided by this Lease Contract, or local ordinance, or state law.

**9. NO ALTERATIONS.** You shall not make any alterations to the premises nor install any appliances, locks or other equipment of any kind without our prior written consent.

**Payment for Rekeying, Repairs, Etc.** You must pay for all repairs or replacements arising from misuse or damage to devices by you or your family, occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair, install, change or rekey the same device during the 30 days preceding your request and we have complied with your request.

**10. AREAS NOT INCLUDED IN THE TERM "APARTMENT."** "Apartment" excludes common areas but includes interior living areas and exterior patios, balconies, attached garages, storerooms for your exclusive use.

---

Yasmine Teersah Lamar, Ryan N Smith

© 2017, National Apartment Association, Inc. - 2/2017, Illinois (Chicago)                    Page 1 of 5

☑ This document was executed via the NAA E-signature System - ID: 125445062

11. **SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

**See special provisions on the last page**

_____
_____
_____
_____
_____
_____

See any additional special provisions.

12. **DAMAGES AND REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, negligence, or intentional conduct by you or your invitees, guests or occupants. **Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following if occurring during the Lease Contract term or renewal period: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment.** We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

13. **PROPERTY LEFT IN APARTMENT.** We may remove any abandoned property left in the unit as provided by state law or local ordinance.

14. **FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, all future rent will be immediately due. We also may end your right of occupancy and recover damages, future rent, attorney's fees, court costs, and other lawful charges as provided by law, court rules, statute or ordinance. Our rights and remedies under paragraph 32 apply to acceleration under this paragraph.

15. **RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 11, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 18. If, at least 5 days before the advance notice period referred to in paragraph 3, we give you written notice of rent increases or Lease Contract changes effective when the Lease Contract term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or Lease Contract changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 42.

16. **DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you during or after the initial term as set forth in Paragraph 3—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date —you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 for all purposes. This new date may not be moved to an earlier date unless we and you agree.

17. **DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

## While You're Living in the Apartment

18. **COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all apartments in the community and do not change dollar amounts on page 1 of this Lease Contract.

19. **LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles and you must comply with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in or near pools and all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community. If you allow an excluded person onto the property it is grounds for termination of your lease.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

20. **PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others. You are responsible for the conduct of your occupants and guests. You nor any people living with you or visiting you shall have been convicted of a crime relating to illegal sexual conduct nor shall be a registered sex offender in any state.

21. **PARKING.** We may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles. Motorcycles or motorized bikes may not be parked inside an apartment or on sidewalks, under stairwells, or in handicapped parking areas. We may have unauthorized or illegally parked vehicles towed under an appropriate law. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or apartment(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster.

22. **RELEASE OF RESIDENT.** Unless you're entitled to terminate this Lease Contract under paragraphs 11, 16, 23, 42, or pursuant to statute or ordinance, you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

23. **MILITARY PERSONNEL CLAUSE.** You may terminate the Lease Contract if you enlist or are drafted or commissioned and on active duty in the U.S. Armed Forces. You also may terminate the Lease Contract if:

(1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; *and*
(2) you (i) receive orders for permanent change-of-station, (ii) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, *or* (iii) are relieved or released from active duty.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after the date on which your next rental payment is due. You must furnish us a copy of your military orders, such as permanent change-of-station orders, call-up orders, or deployment orders or written notification from your commanding officer. Military permission for base housing does not constitute change-of-station order. After you move out, we'll return your security deposit, less lawful deductions. For the purposes of this Lease Contract, orders described in (2) above will only release the resident who qualifies under (1) and (2) above and receives the orders during the Lease

Yasmine Teersah Lamar, Ryan N Smith

© 2017, National Apartment Association, Inc. - 2/2017, Illinois (Chicago)

✓ This document was executed via the NAA E-signature System - ID: 125445062

the resident's household. A co-resident who is not your spouse or dependent cannot terminate under this military clause. Unless you state otherwise in paragraph 11, you represent when signing this Lease Contract that: (1) you do not already have deployment or change-of-station orders; (2) you will not be retiring from the military during the Lease Contract term; and (3) the term of your enlistment or obligation will not end before the Lease Contract term ends. Even if you are entitled to terminate this Lease Contract under this paragraph, liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the lease term when and if you move out, less rents from others received in mitigation under paragraph 32. You must immediately notify us if you are called to active duty or receive deployment or permanent change-of-station orders.

**24. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors, keyed deadbolt locks, window latches, and other safety or security devices.

**Smoke Detectors.** We'll furnish smoke detectors as required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke detector malfunctions to us in writing. Neither you nor others may disable smoke detectors. If you damage or disable the smoke detector or remove a battery without replacing it with a working battery, you may be liable to us for actual damages and attorney's fees. If you disable or damage the smoke detector, or fail to replace a dead battery or report malfunctions to us, you may be liable to us and others for any loss, damage, or fines from fire, smoke, or water and you may be in violation of Illinois law and local ordinance.

**Carbon Monoxide Instructions and Disclosure.** We'll furnish one approved carbon monoxide detector in your apartment as required by Illinois law and local ordinance, and we'll test them and provide working batteries when you first take possession. After that, you must pay for and replace batteries as needed, test the detector, and provide general maintenance. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report carbon monoxide detector malfunctions to us in writing. Neither you nor others may disable carbon monoxide detectors. If you damage or disable the carbon monoxide detector or remove a battery without replacing it with a working battery, you may be liable to us for actual damages and attorney's fees. If you disable or damage the carbon monoxide detector, or fail to replace a dead battery or report malfunctions to us, you may be liable to us and others for any loss, damage, or fines and you may be in violation of Illinois law and local ordinance.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, theft, or vandalism unless otherwise required by law. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. Unless we instruct otherwise, you must—for 24 hours a day during freezing weather—(1) keep the apartment heated to at least 50 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for these services to the extent allowed by applicable law.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must notify us and furnish us with the law-enforcement agency's incident report number upon request.

**25. CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. You will be given an Inventory and Condition form on or before move-in. You must sign and note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or

perform any repairs, painting, wallpapering, carpeting, or electrical changes, nor install any appliances, locks or other equipment of any kind, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. We will permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors, carbon monoxide detectors, radon detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**26. REQUESTS, REPAIRS, AND MALFUNCTIONS.** _IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE_ (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress as described in Paragraph 24). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections, taking into consideration when casualty insurance proceeds are received. Rent will not abate in whole or in part unless authorized under Illinois law.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract within a reasonable time by giving you written notice. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**27. ANIMALS.** _No animals (including mammals, reptiles, birds, fish, rodents and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing._ If we allow an animal, you must sign a separate animal addendum, which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. You must remove an illegal animal within 24 hours of notice from us, or you will be considered in default of this Lease Contact. We will give written authorization for a support animal for a disabled person. We may require a written statement from a qualified professional verifying the need for the support animal. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing, if we deem it necessary, and we may withhold these amounts from your security deposit as describe in Paragraph 46.

**28. WHEN WE MAY ENTER.** You will not unreasonably withhold consent for us to enter your apartment at reasonable times for reasonable purposes as provided by statute or ordinance. To the extent required by law, we will give you 48 hours notice before entering your apartment in the event of a non-emergency.

**29. MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of Lease Contract termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security deposit refunds may be by one check jointly payable to all residents; the check and any deduction itemizations may be mailed to one resident only.

| Replacements |
| --- |

**30. REPLACEMENTS AND SUBLETTING.** Replacing a resident, sub-letting, or assignment is allowed _only when we consent in writing, which we will not unreasonably withhold_. We will accept a reasonable sublease as

provided by statute or ordinance. To the extent allowed by law, we may charge a subletting fee.

**Yasmine Teersah Lamar, Ryan N Smith**
© 2017, National Apartment Association, Inc. - 2/2017, Illinois (Chicago)                    Page 3 of 5

☑ This document was executed via the NAA E-signature System - ID: 125445062

**31. RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 25;
(2) maintain fixtures, furniture, hot water, heating and A/C equipment;
(3) substantially comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and
(4) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

**32. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you move out before your lease expires without paying rent through the end of the lease term or renewal period; (3) you fail to give written move-out notice as required by Paragraph 23 or 42; (4) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (5) you abandon the apartment; (6) you give incorrect or false answers in a rental application; (7) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia, or illegal sexual activity; (8) any illegal drugs, illegal weapons, or drug paraphernalia are found in your apartment; or (9) you or any guest or occupant engages in any of the prohibited conduct described in Paragraph 20. If you or any other residents or occupants, on one or more occasions, uses or permits the use of the apartment or leased premises for the commission of a felony or class A misdemeanor under the laws of this state, we shall have the right to void the lease and recover the apartment. We will mitigate our damages to the extent required by Illinois law.

**Notice and Eviction.** If you default due to non-payment of rent, we may end your right of occupancy by giving you a five-day written notice to vacate. If you default by breaching the lease for reasons other than non-payment of rent, we may end your right of occupancy by giving you ten days' written notice to vacate.

Notice may be served by: (1) personal delivery at the apartment to you or any occupant over 13 years old; (2) by certified or registered mail, return receipt requested—the mailing of same shall constitute delivery; or (3) if no one is in actual possession, by posting the notice on the door. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other Lease Contract obligations. After giving notice to vacate or after filing an eviction lawsuit, we may still accept rent or other sums due; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting money at any time doesn't waive our right to damages, or past or future rent or other sums.

**Acceleration.** All monthly rent for the rest of the Lease Contract term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without our written consent: (1) you move out, remove property in preparing to move out, or give oral or written notice (by you or any occupant) of intent to move out before the Lease Contract term or renewal period ends; *and* (2) you've not paid all rent for the entire Lease Contract term or renewal period. Such conduct is considered a default for which we need not give you notice. Remaining rent also will be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations to the extent required by Illinois law.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent of $ _____ per day is due in advance and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover; and (4) if you fail to vacate the apartment, and we accept subsequent rent, you will become a month to month tenant.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 11, in addition to other sums due. Upon your default, we have all other legal remedies, including Lease Contract termination. Unless a party is seeking exemplary, punitive, or personal-injury damages, the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs to the extent permitted by state law or local ordinance. All unpaid amounts bear 9% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline.

## General Clauses

**33. FULL AND BINDING AGREEMENT.** *Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract, including addendums as referenced in Paragraph 48, is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. This Lease Contract binds subsequent owners.*

**34. ELECTION OF REMEDIES.** All remedies are cumulative. No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our failure to enforce or belatedly enforce written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances.

**35. NOTICE REQUIREMENTS.** Except when notice or demand is required by state law or local ordinance, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed. All notices and documents may be in English and, at our option, in any language that you read or speak.

**36. EMPLOYEES AND AGENTS OF OWNER.** No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.

**37. SUBORDINATION.** This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option.

**38. DISCRETIONARY RIGHTS.** All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**39. FORCE MAJEURE:** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**40. PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**41. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

## When Moving Out

**42. MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early (paragraph 22) except under the military clause (paragraph 23). If you intend to vacate the premises on the Lease End Date (as provided at Paragraph 3, "Lease Term") without further liability to us for rent, **you must provide us with written notice of your intent not to renew the Lease ["Move-out Notice"]** as provided in Paragraph 3. Should you fail to timely provide said Move-out Notice, you will be liable to us for rent for the number of days that your written Notice is less than the number of days set forth in Paragraph 3. For example, if you do not provide any written Notice to us and vacate the premises on or before the stated Lease End Date of the Lease, you will be liable to us for rent for the number of days of required Notice as provided at Paragraph 3 as an Insufficient Notice Charge in addition to any other rent that may be due. Any Insufficient Notice Charge shall not extend the Lease Term beyond the Lease End Date. If you give no Notice and remain in the premises after the Lease End Date, you will be deemed a month-to-month tenant on the same terms and conditions contained herein, except that the monthly rental rate shall be an amount equal to 150% of the current market rental rate as set forth in the Lease, and said rent may be further increased upon 30 days written notice from us to you. If you wish to later terminate the month-to-month tenancy, you must provide **30 days** written notice to us. YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

• We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3. Oral move-out notice will not be accepted and will not terminate your Lease Contract.

**Yasmine Teersah Lamar, Ryan N Smith**

☑ This document was executed via the NAA E-signature System - ID: 125445062

than the end of the Lease Contract term or renewal period.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. You must obtain from our representative written acknowledgment that we received your move-out notice. We will notify you of our intention not to renew your lease at least thirty days before it expires so long as you are not in default under the terms of your Lease Contract.

**43. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease Contract term or renewal period ends unless all rent for the entire Lease Contract term or renewal period is paid in full. Early move-out may result in acceleration of future rent under paragraph 32. You're prohibited from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**44. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**45. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**46. SECURITY DEPOSIT INTEREST, DEDUCTIONS AND OTHER CHARGES.** Interest on your security deposit will be paid to you if required by Illinois law or ordinance. You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved

apartment and is missing; replacing dead or missing smoke-detector batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized security devices or alarm systems; removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under paragraph 27; government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for our time and inconvenience in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract, to the extent allowed by Illinois law or local ordinance.

You'll be liable to us for: (1) charges for replacing all keys and access devices referenced in paragraph 5 if you fail to return them on or before your actual move-out date; and (2) accelerated rent if you have violated paragraph 32.

**47. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We'll mail you your security deposit refund including statutory interest, less lawful deductions, and an itemized accounting, of any deductions along with copies of any paid receipts, as provided by Illinois law or local ordinance.

You have *surrendered* the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 have been turned in where rent is paid—whichever date occurs first.

You have *abandoned* the apartment when the provisions of the local Chicago abandonment ordinance have been met.

Surrender, abandonment, or judicial eviction ends your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment.

## Signatures, Originals and Attachments

**48. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, each with original signatures—one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to this Lease Contract and are binding even if not initialed or signed.

- ☒ Animal Addendum
- ☐ Inventory and Condition Form
- ☒ Mold Addendum
- ☐ Enclosed Garage Addendum
- ☒ Community Policies Addendum
- ☐ Lease Contract Guaranty ( _____ guaranties, if more than one)
- ☐ Notice of Intent to Move Out Form
- ☐ Parking Permit or Sticker (quantity: _____ )
- ☒ Satellite Dish or Antenna Addendum
- ☐ Asbestos Addendum (if asbestos is present)
- ☒ Lead Hazard Information and Disclosure Addendum (federal)
- ☒ Utility Addendum
- ☒ Remote Control, Card or Code Access Gate Addendum
- ☒ Lease Contract Buy-Out Agreement
- ☐ Intrusion Alarm Addendum
- ☒ Residential Landlord and Tenant Ordinance Summary
- ☒ Notice of Code Violations
- ☐ Notice of Intent to Terminate Utility Service
- ☐ Other_____
- ☐ Other_____

### NOTICE OF CONDITIONS AFFECTING HABITABILITY

We hereby acknowledge that Owner has disclosed any code violations, code enforcement litigation and/or compliance board proceedings during the previous 12 months for the apartment and common area and any notice of intent to terminate utility service, copies of which, if any, are attached to this Lease.

**Name and address of locator service** *(if applicable)*
_____
_____
_____
_____

**Resident or Residents** (all sign below)

*Yasmine Teersah Lamar* _____
*Ryan N Smith* _____
_____
_____

**Owner or Owner's Representative** *(signing on behalf of owner)*

*Alan Onchak* _____

**Address and phone number of owner's representative for notice purposes**

500 E. 33rd Street
Chicago, IL 60616
(312)842-7333

**Date form is filled out** *(same as on top of page 1)* _____ 11/03/2017

**You are legally bound by this document. Please read it carefully.**

**Before submitting a rental application or signing a Lease Contract, you may take a copy of these documents to review and/or consult an attorney.**

**Additional provisions or changes may be made in the Lease Contract if agreed to in writing by all parties.**

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2 **All rent payments made payable to Draper and Kramer and mailed to 500 E. 33rd Street, Chicago, IL 60616. Please make sure to include your building and apartment number on the payment. Utility Fee is considered additional rent and must be paid on the 1st of each month. It is the resident's responsibility to request in writing any reasonable accommodation or reasonable modification.**

☑ This document was executed via the NAA E-signature System - ID: 125445062

Chicago
**SECURITY DEPOSIT RECEIPT**

Date _____ **November 3, 2017** _____

Received from (Lessee) **Yasmine Teersah Lamar Ryan N Smith**
_____

$ _____ **0.00** _____ By Owner/Agent Name **Lake Meadows Phase I and II L.P., an Illinois Ltd. Partnership**

As Security Deposit for Apartment # _____ **5-1205** _____

Located at **3445 S RHODES AVE UNIT 1205**

City _____ **Chicago** _____ State _____ **IL** _____ ZIP _____ **60616** _____

LESSEE SIGNATURE *Yasmine Teersah Lamar*
Date _____ 11/03/2017 _____

AGENT SIGNATURE *Alan Onchak*
Date 11/03/2017

July 2015

☑ This document was executed via the NAA E-signature System - ID: 125445062

This form is approved by the Illinois Supreme Court and is required to be used in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT | EXPARTE EVICTION ORDER | For Court Use Only |
|---|---|---|
| Cook _____ COUNTY | | |

**Instructions ▼**

Directly above, enter the name of the county where the case was filed.

Enter the full names of Plaintiff, Defendants, and the case number as listed on the *Eviction Complaint*.

Check the box for Unknown Occupants if it was checked on *Eviction Complaint*.

**Plaintiff** *(For example, the landlord or owner)*:

Draper and Kramer, Inc., as Managing Agent for Lake

Meadows Phase I Limited Partnership

v.

**Defendants** *(For example, the tenants or occupants)*:

Yasmine T. Lamar, Ryan N. Smith and Any and All Unknown Occupants

☑ **Unknown Occupants**

20181710362

**Case Number**

| **Notice to Defendants:** | This *Order* is a judgment against you. It may appear on a background or credit check and affect your ability to rent housing. Do not agree to or sign off on this *Order* if: <br> • **You have an agreement with Plaintiff that lets you stay in the property; or** <br> • **Plaintiff has agreed to dismiss this case if you move out by a certain date.** |
|---|---|

Check this box if the judge dismissed any Defendants from the case. Enter the names of those Defendants.

In 1, enter the complete address, including the street direction (N., E., etc.) and unit # or floor.

In 2, enter the date and time by which Defendants must move out.

In 3, enter the names of Defendants to be evicted and check the box for Unknown Occupants if it was checked on the *Eviction Complaint*.

In 4, check the boxes that apply. If Plaintiff is awarded money, enter the names of Defendants who have been ordered to pay the money.

**Sections 1-4 must be completed.**

☑ The following individuals are dismissed as Defendants, and this *Order* does not apply to them:
Ryan N. Smith

1. Plaintiff is given possession of the property located at:
3445 S. Rhodes Ave.                     1205
   *Street address*                        *Unit*
Chicago              IL       60616
   *City*              *State*       *ZIP*

2. Defendants must move out of the property on or before August 16, 2018 by ☒ 11:59 p.m.
   *Date*
   or by ☐ _____
        *Time*

3. Plaintiff may give the sheriff a copy of this *Eviction Order*. If Defendants do not move by the date and time listed above, the Sheriff is ordered to evict the following Defendants: Yasmine T. Lamar
and Any and All Unknown Occupants                    ☑ Unknown Occupants

4. Plaintiff is owed *(check all that apply)*: ☐ No money claimed in *Eviction Complaint*
   ☐ Money claim dismissed and Plaintiff may seek this money in the future
   ☐ Money claim dismissed and Plaintiff may not seek this money in the future
   ☑ $ 2465.89    in rent or assessments
   ☑ $ 541.50     in court costs
   ☐ $ _____    in attorneys' fees *(if allowed)*
   ☐ The total judgment amount of $ 3007.39 is entered against the following Defendants:
   Yasmine T. Lamar

   ☐ The Court is not yet ruling on the money claim. Case continued to _____
      for ☐ status ☐ hearing in courtroom _____      *Date*       *Time*
      and the Court finds there is no just reason to delay enforcement or appear of this final Order.

      Associate Judge James Edghill, Jr.

Enter the name and contact information of the person completing this *Order*.

**Name:** BRG Law Group/Adair Macauley
**Address:** 55 E. Monroe, Ste. 3900 Chicago
**Telephone #:** (312) 252-4303
**Attorney # (if any):** 47096

**ENTERED:** _____
*Date*        AUG -8 2018

Circuit Court-2216

*Judge*

E-O 3500.2                          Page 1 of 1                          (12/17)

Case 1:20-cv-00377 Document #643 Filed 10/28/20 Page 19 of 20 PageID #2380

# DRAPER & KRAMER

## STATEMENT OF DEPOSIT

**From:** Lake Meadows Phase I

Lake Meadows Phase I

500 EAST 33RD STREET, 1ST FLR

Chicago, IL 60616

**Date Printed :** 08/30/2018

**Account Number** ▮▮▮▮▮▮

**To:** Yasmine Lamar

3445 S RHODES AVE UNIT 1205

CHICAGO. IL 60616

| | | | |
|---|---|---|---|
| **Occupy Date :** | 10/31/2017 | **Co-Residents:** | |
| **Lease From Date:** | 10/31/2017 | Ryan Smith | |
| **Lease Expire Date:** | 04/30/2019 | | |
| **Date Notified of Vacate:** | 07/03/2018 | | |
| **Vacate Date:** | 08/28/2018 | | |

| Date | Description | Charge | Payment | Balance | Chg/Rec |
|------|-------------|--------|---------|---------|---------|
| | Balance as of 8/01/2018 | | | 1,700.89 | |
| 08/01/2018 | Apartment Rent (08/2018) | 730.00 | 0.00 | 2,430.89 | 6369588 |
| 08/01/2018 | Utilities Reimbursed (08/2018) | 35.00 | 0.00 | 2,465.89 | 6370213 |
| 08/05/2018 | Legal Fee | 966.25 | 0.00 | 3,432.14 | 6444396 |
| 08/30/2018 | Apartment Rent (08/2018) Credit 3 days | -70.65 | 0.00 | 3,361.49 | 6444411 |
| 08/30/2018 | Utilities Reimbursed (08/2018) Credit 3 days | -3.39 | 0.00 | 3,358.10 | 6444412 |
| 08/30/2018 | Damages/Cleaning 5yr carpet life..installed 03/16..prorated 427.00 for 3 yrs | 256.00 | 0.00 | 3,614.10 | 6444413 |
| 08/30/2018 | Damages/Cleaning Furniture/trash disposal | 150.00 | 0.00 | 3,764.10 | 6444414 |
| 08/30/2018 | Damages/Cleaning Missing Fob | 50.00 | 0.00 | 3,814.10 | 6444415 |
| 08/30/2018 | Damages/Cleaning Missing Public access key 2 @25.00 | 50.00 | 0.00 | 3,864.10 | 6444416 |
| 08/30/2018 | Damages/Cleaning Missing laundry card | 5.00 | 0.00 | 3,869.10 | 6444417 |
| 08/30/2018 | Damages/Cleaning Missing Apt keys 4 @25.00 | 100.00 | 0.00 | 3,969.10 | 6444418 |

THANK YOU FOR YOUR RESIDENCY AT LAKE MEADOWS APARTMENTS. PLEASE SEE THE ITEMIZED LIST OF CLEANING AND/OR DAMAGE CHARGES ASSESSED. THERE IS A BALANCE OF __$3969.10_____, ANY UNPAID BALANCES WILL BE TURNED OVER TO COLLECTIONS THE DATE THE FINAL STATEMENT IS COMPLETE. MONEY ORDERS ARE NOT ACCEPTED. PLEASE FEEL FREE TO CALL US AT 312-842-7333 IF YOU HAVE ANY QUESTIONS.

**Manager's Signature:** _GAeeelham_____

# I.Q. Data International, Inc.

P.O. Box 340, Bothell, Washington 98041-0340 •21222 30th Drive SE, Suite 120, Bothell, WA 98021-7012
Hours: Monday-Friday 8AM TO 5PM PST • Toll Free 888-248-2509 or 425-609-2150 Fax: 425-609-2104



August 2, 2019

Creditor: LAKE MEADOWS I APTS (IL)
Principal Due:        $3969.10          PDC-Account #: ▮▮▮▮▮▮▮▮
Interest Due:         $184.32
Total Due:            $4153.42

Dear YASMINE LAMAR

We have received a post-dated payment for your account. As per our conversation we will be depositing your payment in the amount of $50.00 on 08/09/19 into our trust account. However, if your payment is declined/returned for any reason, your payment arrangements will be null and void. If you have any questions or concerns please feel free to contact our office.

Thank you for your payment!

Sincerely,

CESAR GALVAN
Account Representative
888-248-2509

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose. Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum.

CCORENT01PDC_331079617

***Detach Lower Portion and Return with Payment***

| Card number plus 3 or 4-digit security code (on back of card) | | Circle One |
|---|---|---|
| Cardholder Name | EXP. DATE / | VISA |
| Cardholder Signature | AMOUNT $ | |

IQD
PO Box 1280
Oaks PA 19456-1280
ADDRESS SERVICE REQUESTED

August 2, 2019

I.Q. Data International, Inc.
P.O. Box 340
Bothell, WA 98041-0340

PDC
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

YASMINE LAMAR
RYAN SMITH
3745 S Indiana Ave
Chicago IL 60653-1602

Account # ▮▮▮▮▮▮▮▮
Total Due: $4153.42