**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| YASMINE LAMAR,<br>Individually and on behalf of a class of<br>others similarly situated, | ) ) ) | Case No. 20-cv-00377 |
| Plaintiff, | ) ) ) | Honorable Judge Gary Feinerman |
| vs. | ) ) | |
| IQ DATA INTERNATIONAL, INC., | ) ) | Magistrate Judge Susan E. Cox |
| Defendant. | ) ) ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

I.Q. Data International, Inc. submits this Memorandum of Law in Support of its Motion

for Summary Judgment, and respectfully requests that the Court grant judgment in its favor.

## INTRODUCTION

Yasmine Lamar brings this putative class action lawsuit against I.Q. Data, alleging two

violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

Summary judgment should be granted in I.Q. Data's favor on both claims.

First, Plaintiff seeks to hold I.Q. Data liable for attempting to collect a debt that –

unbeknownst to I.Q. Data – included attorneys' fees incurred by her landlord during its eviction

action against Ms. Lamar, which the landlord was prohibited from charging under Chicago's

Residential Landlord Tenant Ordinance. I.Q. Data contractually requires its creditor clients,

including Ms. Lamar's landlord, to refer only legally-collectable debts. I.Q. Data had no

knowledge of the underlying eviction action or the landlord's attempt to recover attorneys' fees,

and I.Q. Data is not required to independently investigate the validity of every debt referred.

Because doing so is impossible, I.Q. Data maintains policies adapted to avoid the collection of

debts that may not be legally due. It is therefore entitled to the FDCPA's bona fide error defense.

Second, Plaintiff claims I.Q. Data fails to give debtors the statutorily-required notice of their rights to dispute a debt. Plaintiff cannot recover on this claim, as I.Q. Data's initial communication to Plaintiff unquestionably provides the required disclosures.

**STATEMENT OF FACTS**

Yasmine Lamar resided in the Lake Meadows Phase I apartment complex in Chicago, Illinois, which was managed by Draper and Kramer, Inc. ("D&K"). SMF ¶¶ 5-6. After falling behind on her rent payments, D&K secured an eviction order against Plaintiff on August 8, 2018, and she vacated the property on August 28, 2018. SMF ¶¶ 5-7. D&K sent Plaintiff an accounting notice dated August 30, 2018, stating that Plaintiff owed it a balance of $3,969.10. SMF ¶ 8. When Plaintiff did not submit payment, D&K referred her account to I.Q. Data for collection. SMF ¶ 10.

I.Q. Data is engaged by D&K to aid in the collection of debts pursuant to a formal Collection Agreement. SMF ¶¶ 9, 11. The Collection Agreement contains a number of express warranties made by D&K to ensure that all debts referred to I.Q. Data are legally collectable. *First*, D&K expressly warrants that "the Account Information on the Delinquent Accounts are accurate, valid, true and correct." SMF ¶ 12. *Second*, D&K expressly warrants that it will comply with I.Q. Data's requests for documentation and account information evidencing the debts it refers for collection. SMF ¶ 13. *Third*, D&K expressly assumes responsibility for compliance with all applicable laws, rules, regulations, and ordinances, including local housing laws and any laws or rules regulating a landlord/tenant relationship. SMF ¶ 14. *Fourth*, D&K warrants that it will indemnify I.Q. Data for damages when it provides inaccurate information regarding the validity of delinquent accounts. SMF ¶ 15. *Fifth*, and importantly, D&K "expressly warrants that all Delinquent Accounts are legally due and owing." SMF ¶ 16.

2

I.Q. Data relies on these warranties to ensure the amounts it is referred for collection are valid and legally-collectable debts. SMF ¶ 20. As a matter of policy, I.Q. Data includes these provisions in its contracts with all creditor clients to ensure that the debts referred for collection are valid. SMF ¶¶ 37-40. I.Q. Data maintains additional policies and procedures, discussed in further detail below, which are designed to prevent the collection of debts that may not be legally due and owing, and that are designed to validate the debt and ensure compliance with the FDCPA. SMF ¶¶ 36-47.

When D&K refers an account to I.Q. Data, I.Q. Data integrates with D&K's property management software, which allows I.Q. Data to generate an "Account Information Report" containing the pertinent information for collection: the debtor's name, address on file, contact information, lease dates, and outstanding balance. SMF ¶ 18. D&K does not provide I.Q. Data with any information that states whether D&K filed an eviction action against its former tenant/the debtor, or whether D&K charged its former tenant/the debtor legal fees in connection with an eviction action. SMF ¶ 19. At the time Yasmine Lamar's account was referred to I.Q. Data by D&K, I.Q. Data was not provided with any documents and was not provided with any information that indicated whether D&K filed an eviction action against Plaintiff or otherwise charged Plaintiff attorneys' fees in connection with any eviction action. SMF ¶ 22.

On September 10, 2018, I.Q. Data sent its initial communication to Plaintiff – a form letter which was automatically generated as the first communication to the debtor. SMF ¶¶ 25-26, 31. The letter included the notices required by the FDCPA, advising Plaintiff of her validation rights and her right to dispute the debt. SMF ¶ 27.

In this lawsuit, Plaintiff claims that I.Q. Data never sent her the required notice of her validation/dispute rights, and that I.Q. Data attempted to collect from her amounts that were not legally due and owing. *See generally* First Amended Complaint ("FAC") *docket entry* #48. Plaintiff alleges that the balance included attorneys' fees that D&K incurred in prosecuting its eviction action against Plaintiff, which D&K was not permitted to charge under the City of Chicago's Residential Landlord and Tenant Ordinance. *Id.* ¶¶ 1, 15.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party." *Ritchie v. Glidden Company*, 242 F.3d 713, 720 (7th Cir. 2001). "Neither the mere existence of some alleged factual dispute between the parties, nor the existence of some metaphysical doubt as to material facts is sufficient to defeat such a motion." *Holtz v. J.J.B. Hillard W. Lyons, Inc.*, 185 F.3d 732, 738 (7th Cir. 1999).

Summary judgment is the "put up or shut up" moment in a lawsuit. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 936 (7th Cir. 2010). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

## ARGUMENT

Plaintiff alleges that I.Q. Data violated §§ 1692e and 1692f of the FDCPA by seeking to collect attorneys' fees incurred in connection with D&K's eviction action, when I.Q. Data was allegedly not entitled to collect such fees by law or contract. Second, Plaintiff alleges I.Q. Data violated § 1692g(a) of the FDCPA by not providing Plaintiff the required dispute notice with its initial communication. For the reasons stated below, I.Q. Data is entitled to the bona fide error defense on Plaintiff's first claim, and cannot be held liable for the second claim.

### I. I.Q. Data is entitled to the bona fide error defense on Plaintiff's claim that it sought to collect unauthorized attorneys' fees.

The FDCPA provides an affirmative defense to debt collectors accused of violating §§ 1692e and 1692f, known as the "bona fide error defense." *See* 15 U.S.C. § 1692k(c); *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005). I.Q. Data denies any violation of the FDCPA; however, in determining whether the bona fide error defense applies, the court may presume, without actually deciding, that a defendant violated the FDCPA. *Id.* at 537. Under the FDCPA,

> [a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

To qualify for the bona fide error defense, a debt collector must establish by a preponderance of the evidence: (1) "that the presumed FDCPA violation was not intentional;" (2) "that the presumed FDCPA violation resulted from a bona fide error;" and (3) "that it maintained procedures reasonably adapted to avoid any such error." *See Kort*, 394 F.3d at 537. These requirements are all met here.

**A. I.Q. Data's presumed FDCPA violation was unintentional and resulted from a bona fide error.**

Presuming for the sake of this motion that I.Q. Data attempted to collect unauthorized legal fees from Plaintiff, it did so unintentionally and in bona fide error. "A debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional." *Kort*, 394 F.3d at 537.

Here, I.Q. Data was not aware that Plaintiff's outstanding balance included attorneys' fees charged by D&K in connection with its eviction action against her. Per standard procedure, when the account was referred, I.Q. Data did not receive any documents or information from D&K indicating that an eviction action had been filed, or that any attorneys' fees had been charged in connection with the eviction. SMF ¶¶ 19, 22. If I.Q. Data had known D&K referred it an account that included fees D&K was not legally entitled to charge, I.Q. Data would never had sought to collect that amount from Plaintiff. SMF ¶ 49. This is evidenced by the fact that once I.Q. Data learned that D&K charged Plaintiff an amount it was allegedly not permitted to collect, I.Q. Data immediately stopped its collection efforts. SMF ¶ 50.

It is also why I.Q. Data, as a matter of policy, includes provisions in its collection agreements to prevent the assignment of debts that cannot legally be collected, including: (i) an express warranty that all information provided in connection to a debtor's account is accurate, valid, true and correct; (ii) a warranty that the creditor will comply with I.Q. Data's requests for documentation and account information evidencing the debts it refers for collection; (iii) a warranty that the creditor assumes responsibility for compliance with all applicable laws, rules, regulations, and ordinances; (iv) an indemnification provision in the event the creditor provides inaccurate information regarding the validity of delinquent accounts; and (v) an express warranty that "all Delinquent Accounts are legally due and owing." SMF ¶¶ 37-40. All of these provisions were

6

included in the Collection Agreement with D&K. SMF ¶¶ 12-16.

I.Q. Data reasonably relies on the express warranties made by D&K in the Collection Agreement. SMF ¶ 20. Otherwise, I.Q. Data would have to perform an independent investigation into the validity of every single debt it is referred. The law is clear that a debt collector is not required to do that: "A debt collector has the right to rely on information provided by the client-creditor, and has no obligation to undertake an independent debt validity investigation." *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1140-41 (N.D. Ill. 1998).

In *Jenkins v. Heintz*, the Seventh Circuit recognized that neither attorneys acting as debt collectors nor non-lawyer debt collectors are required to "conduct an independent investigation into the legal intricacies of the client's contract with the consumer." 124 F.3d 824, 833-34 (7th Cir. 1997). Similarly, in *Hyman v. Tate*, the Seventh Circuit held that the FDCPA "does not require collectors to independently verify the validity of the debt to qualify for the 'bona fide error' defense." 362 F.3d 965, 968 (7th Cir. 2004). Indeed, courts have noted that "Defendants' reliance on [a creditor's] representation might establish that the error was unintentional and bona fide." *Kasalo v. NCSPLUS Inc.*, 2011 WL 2582195, at *4 (N.D. Ill. June 27, 2011).

If I.Q. Data violated the FDCPA because the balance it sought to collect included unauthorized fees charged by D&K, as Plaintiff alleges, the error was bona fide. When the account was assigned, I.Q. Data was not provided any information regarding the eviction action or unauthorized legal fees, and I.Q. Data had no reason to doubt the validity of the debt submitted by the creditor. Indeed, apart from the allegations in the present case, I.Q. Data is unaware of any instance in which D&K has referred I.Q. Data an account that included an amount it was not entitled to collect. SMF ¶ 51. As such, any violation of the FDCPA based on its collection of an unauthorized legal fee was an unintentional and a bona fide error.

7

**B. I.Q. Data maintained procedures reasonably adapted to avoid the error.**

As to the third element of the bona fide error defense, I.Q. Data has in place procedures reasonably adapted to ensure that debts it collects are legally collectable, and to ensure compliance with the FDCPA generally. SMF ¶ 36. The first, as discussed, is a contract with the creditor client (and a policy of having a similar contract with all its creditor clients) whereby the creditor expressly warrants that the delinquent accounts referred are accurate, valid, true, and correct; that the creditor will comply with all applicable laws, rules, and regulations; and that "all Delinquent Accounts are legally due and owing." SMF ¶¶ 12, 14, 16, 37, 39. *See Hyman*, 362 F.3d at 968 (holding even without a "formal agreement," debt collector had adequate procedures for purposes of bona fide error defense where it instructed the client to only send files that were not in bankruptcy and promptly removed from the collection list any accounts that were referred by mistake); *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995-96 (7th Cir. 2003) (suggesting that reasonable procedure could include "an agreement with its creditor-clients that debts are current and the demand letter was sent soon after the assignment"). I.Q. Data's collection agreements also contain warranties that the creditor must provide validation documentation upon request and indemnify I.Q. Data for damages arising out of the creditor's referral of an invalid debt. SMF ¶¶ 13, 15, 38, 40.

A formal agreement with the creditor client on the front end, requiring that it not send invalid debts is the most reasonable measure to prevent collection of any unauthorized amounts. The FDCPA prohibits the "collection of any amount… unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. 1692f(1). Thus, to ensure a debt referred is legally valid, I.Q. Data would have to review every debtor's lease or other contract with the creditor, and apply every state's laws to a creditor's charges (or every

*city's* laws, since Plaintiff is alleging the fees were prohibited by the City of Chicago's Residential Landlord Tenant Ordinance). On the issue in this case, it would also require a countywide search of eviction records.

I.Q. Data thus reasonably relies on its contracts with its creditor client to refer valid debts, and also maintains validation policies and procedures to prevent the collection of debts that are not legally due and owing. SMF ¶¶ 20, 44. The validation policies are designed to promptly stop collections on an account where a creditor has somehow failed to comply with its contractual obligations and referred I.Q. Data a debt for collection that is not legally-collectable. SMF ¶ 44.

The Seventh Circuit, in *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004), articulated the rationale of validation procedures:

> Courts do not impute to debt collectors other information that may be in creditors' files—for example, that debt has been paid or was bogus to start with. This is why debt collectors send out notices informing debtors of their entitlement to require verification and to contest claims. 15 U.S.C. § 1692g. Verification would be unnecessary if debt collectors were charged with the creditors' knowledge.

I.Q. Data's FDCPA Policy requires a validation notice to be mailed prior to the initiation of collection-related activities, to give the debtor an opportunity to dispute the debt. SMF ¶ 46. As discussed above, a letter containing the validation notices required by the FDCPA is automatically generated when I.Q. Data loads an account into its system to be sent out as the initial communication to the debtor. SMF ¶¶ 26, 28. I.Q. Data policy is to suspend all collection activities on an account if a written dispute is received within the validation period, and I.Q. Data must then provide written verification of the debt. SMF ¶ 46. If I.Q. Data is unable to provide verification of the debt in response to a consumer's written request for verification, I.Q. Data ceases all collection efforts on the account. *Id.*

All I.Q. Data employees are required to partake in a two-week FDCPA training course, where the statute and the validation procedures are covered extensively. SMF ¶¶ 41-42, 44. FDCPA training at I.Q. Data includes: (1) participatory FDCPA training modules; (2) administered testing to new employees regarding their understanding of the training modules; (3) provision of policies and standard operating procedures to employees pertaining to the collection of accounts; (4) affirmation from each employee that they have both read and agree to be bound by the policies and standard operating procedures provided them; (5) demonstration and lecture provided to employees as to how to remain compliant with the FDCPA; and (6) refresher training administered to every employee regarding their understanding of the FDCPA. SMF ¶ 43.

With respect to debt validation, I.Q. Data's training includes education on provisions of the FDCPA regarding validation notice and the validation procedure, including the purpose and goal of validation, required contents of the validation notice, timing on when the validation notice must be sent, what to do when a consumer disputes the debt, and how to respond to and handle a dispute. SMF ¶ 45. If a lawsuit is filed, I.Q. Data assigns an attorney to review all issues related to an alleged FDCPA violation, and stops all collection efforts on a disputed balance. SMF ¶ 47.

Short of independently investigating and verifying every charge made by a creditor, there is not much else a debt collector can do to ensure that the debts it is referred are legally valid. Maintenance of reasonably adapted procedures for purposes of § 1692k(c) "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort*, 394 F.3d at 539 (citing *Hyman*, 362 F.3d at 968 ("Although [the debt collector] could have done more . . . , §1692k(c) only requires collectors to adopt reasonable procedures.")).

Here, I.Q. Data has in place reasonable procedures to avoid the erroneous collection of debts that cannot legally be collected and has therefore satisfied §1692k(c)'s third element. Even *if* I.Q. Data erred and violated the FDCPA, the bona fide error defense applies.

**II.     I.Q. Data sent Plaintiff the required § 1692g(a) notice with its initial communication, and should be granted summary judgment accordingly.**

Plaintiff alleges I.Q. Data failed to provide her the required notice of her validation/ dispute rights in its initial communication or within five days after the initial communication. FAC ¶ 22. The FDCPA mandates that a debt collector provide, in the initial communication with the consumer, or within five days after the initial communication, the following information:

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

15 U.S.C. § 1692g(a)(3), (4). Plaintiff alleges that, to date, I.Q. Data has still not provided her a notice with the aforementioned information. FAC ¶ 37.

There is no genuine issue of fact on this claim, as I.Q. Data provided Plaintiff with the required disclosures in its initial communication to her – a September 10, 2018 pre-collect letter. SMF ¶¶ 27, 31. Per its Collection Agreement with D&K, I.Q. Data performs certain "pre-collect" services before an account is formally assigned, and it did so with respect to Plaintiff's account. SMF ¶¶ 17, 24. When I.Q. Data loads a "pre-collect" account into its system, that system automatically generates a "pre-collect" letter to be sent as the initial communication to a debtor. SMF ¶ 26. The "pre-collect" letter is a form letter, which contains the validation notices required

11

by the FDCPA. SMF ¶ 27.

In this case, I.Q. Data's system generated a request for the "pre-collect" form letter on September 7, 2018 and it was mailed to Plaintiff the next business day (September 10, 2018), in accordance with I.Q. Data's procedures. SMF ¶¶ 25, 29. The letter was sent to the address D&K provided to I.Q. Data as the address on file for Plaintiff, and I.Q. Data did not receive any record of the letter being returned as undeliverable. SMF ¶¶ 29-30. The letter includes the following validation and dispute notices required by 15 U.S.C. § 1692g(a):

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or a copy of a judgment and mail you a copy of such judgment or verification.

SMF ¶ 27. I.Q. Data's collection system notates all attempts to collect on an account, including all actions taken with respect to the account, all correspondences sent, and all calls made or received. SMF ¶ 23. The account notes associated with Plaintiff's account show that, in accordance with its usual procedures, the September 10, 2018 pre-collect letter was I.Q. Data's initial communication with Plaintiff. SMF ¶ 31.

Plaintiff cannot credibly argue that there was some other "initial communication" in which (or within five days of which) I.Q. Data failed to include the validation notice. Plaintiff's account notes contain no record of any calls, letters, or other communications before the September 10, 2018 pre-collect letter. SMF ¶ 35. Plaintiff has no evidence of an earlier communication, as she admittedly does not have any documents evidencing the initial communication or the date on which it occurred. SMF ¶ 33. Plaintiff, in fact, has acknowledged that I.Q. Data is in possession of all such documents. SMF ¶ 34.

I.Q. Data has produced the initial communication sent to Plaintiff with the required validation notice, and it has produced evidence showing when and how that communication was sent. *See* SMF ¶¶ 23-35. Based on a similar § 1692g(a) claim and very similar evidence, the court granted summary judgment in favor of the defendant in *Krawczyk v. Centurion Capital Corp.*, 2009 WL 395458 (N.D. Ill. Feb. 18, 2009). There, the defendant submitted an affidavit attesting to the process by which the letter was automatically generated and sent, and provided the court with an example of the form letter containing the required FDCPA validation notice. *Id.* at *12.

The court explained that the plaintiff had offered no evidence to rebut the fact that the letter was sent and that it contained the required validation notice. *Id.* When the plaintiff asserted that he never received it, the court rejected that argument because "[t]he FDCPA only requires the debt collector to send the notice, not to establish actual receipt." *Id.* (citing *Mahon v. Credit Bureau of Placer County Inc.*, 171 F.3d 1197, 1201-02 (9th Cir.1999) (debt collector must prove only that the notice was sent, not that it was actually received by the consumer)).

Here, I.Q. Data has established that it sent the required validation notice in its first communication to Plaintiff. Only a "genuine" issue of material fact precludes summary judgment, and factual disputes are "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001). Plaintiff admits that she has nothing to support her self-serving allegation that there was some other initial communication lacking the required disclosures. Accordingly, summary judgment should be granted in favor of I.Q. Data on this claim.

### III. The class claims should be dismissed.

Plaintiff's class claims should be dismissed because she has no viable individual claims against I.Q. Data. A class action suit cannot proceed in the absence of a class representative. Fed. R. Civ. P. 23(a); *Kifer v. Ellsworth*, 346 F.3d 1155, 1156 (7th Cir. 2003). Although the mootness of a named plaintiff's claim does not automatically disqualify her from serving as class representative, it makes her presumptively inadequate. *Culver v. City of Milwaukee*, 277 F.3d 908, 912 (7th Cir. 2002).

Yasmine Lamar has no viable claim under § 1692g(a) given that I.Q. Data sent her the required notices in its initial communication. She therefore is not an adequate class representative and does not have a claim that is typical of the putative class. *See* Fed. R. Civ. P. 23(a)(3). Plaintiff's §§ 1692e and 1692f claim, stemming from I.Q. Data's purported collection of unauthorized attorneys' fees, is defeated by operation of the bona fide error defense. That defense applies equally to both the claims of Plaintiff and the claims of the putative class.

### CONCLUSION

For the reasons stated above, I.Q. Data International, Inc. respectfully requests that this Honorable Court grant summary judgment in its favor and against Plaintiff, and for such other and further relief as this Honorable Court deems just.

Dated: December 28, 2020                                      Respectfully submitted,

                                                    By:   /s/ *Christina R. Spiezia*
                                                          GORDON REES SCULLY MANSUKHANI LLP
                                                          Paul Gamboa (#6282923)
                                                          Christina R. Spiezia (#6316508)
                                                          One North Franklin, Suite 800
                                                          Chicago, Illinois 60606
                                                          Phone: (312) 619-4937
                                                          Fax: (312) 565-6511
                                                          pgamboa@grsm.com
                                                          cspiezia@grsm.com
                                                          *Attorneys for Defendant*

14

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, states that on December 28, 2020, a true and complete copy of the filed foregoing document was served upon the below attorneys by filing same electronically with the United States District Court, Northern District of Illinois, via the CM/ECF electronic filing system.

*Attorneys for Plaintiff*
Mary Frances Charlton
Arturo Hernandez
Patricia Nix Hodes
Chicago Coalition for the Homeless
70 E. Lake Street, Suite 720
Chicago, Illinois 60601
(312) 459-6607
maryfrances@chicagohomeless.org
arturo@chicagohomeless.org
pnixhodes@yahoo.com

Andrea Bopp Stark
Charles Marshall Delbaum
National Consumer Law Center
7 Winthrop Square
Boston, Massachusetts 02110
(617) 542-8010
astark@nclc.org
cdelbaum@nclc.org

Dated: December 28, 2020                    Respectfully submitted,

By:    /s/ *Christina R. Spiezia*
         GORDON REES SCULLY MANSUKHANI LLP
         Paul Gamboa (#6282923)
         Christina R. Spiezia (#6316508)
         One North Franklin, Suite 800
         Chicago, Illinois 60606
         Phone: (312) 619-4937
         Fax: (312) 565-6511
         pgamboa@grsm.com
         cspiezia@grsm.com
         *Attorneys for Defendant*

15