**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| YASMINE LAMAR, | ) | |
| on behalf of plaintiff and a class, | ) | |
| | ) | |
| Plaintiff, | ) | Docket No. 1:20-cv-377 |
| | ) | |
| vs. | ) | |
| | ) | |
| IQ DATA INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT MOTION AND MEMORANDUM FOR AN ORDER:**

**(1) FINDING THAT CERTIFICATION OF A CLASS FOR SETTLEMENT
   PURPOSESONLY IS LIKELY;
(2) GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
(3) DIRECTING NOTICE TO THE CLASS;
(4) SETTING A HEARING DATE FOR A FAIRNESS HEARING.**

Plaintiff Yasmine Lamar ("Ms. Lamar"), on behalf of herself and all others similarly

situated, and Defendant IQ Data International, Inc. ("IQDI") respectfully request that the Court

enter an order:

1.  Finding that certification of the class for purposes of judgment on the proposed Settlement is

    likely;

2.  Finding that final approval of the proposed Settlement is likely and granting preliminary

    approval of the Settlement Agreement pursuant to which the parties propose to settle this

    action on a class wide basis;

3. Directing Notice to the Settlement Class in the form and manner set forth in the Settlement Agreement or in such other form and manner determined by the Court to be appropriate pursuant to Fed. R. Civ. P. 23(c)(2) and (e)(1); and

4. Scheduling a fairness hearing consistent with the time frame and process set forth in the Settlement Agreement and this motion.

## I.      INTRODUCTION

This is a proposed class action based on alleged unfair and deceptive debt collection practices of IQDI. On behalf of herself and others similarly situated Chicago tenants, Ms. Lamar alleges, among other things, that IQDI violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq* (**FDCPA**), by seeking to collect attorney's fees in connection with evictions from Chicago properties, where such fees were not awarded by the court, in violation of Chicago Mun. Code Ch. 5-12-180. The parties engaged in substantial discovery, filed discovery and dispositive motions, and participated in a Settlement Conference with Magistrate Judge Susan Cox on January 25, 2021. The parties ultimately reached a proposed class settlement ("the Agreement"), which is attached hereto as EXHIBIT 1.[1]

As contemplated in the Settlement Agreement, and for settlement purposes only, Ms. Lamar respectfully requests entry of an order preliminarily approving the terms of the settlement and the notice procedure set forth in the Agreement. Consistent with the Agreement, Ms. Lamar will show below that this action meets all of the requirements for class certification. Ms. Lamar will then demonstrate that final approval of the settlement is likely. Finally, Ms. Lamar will establish that the proposed notice to be sent by first class mail to class members will explain in a

---

[1] At the time of this filing, the Settlement Agreement has been signed by attorneys for Ms. Lamar and IQDI and by Ms. Lamar. IQDI's representative signature is forthcoming.

clear and forthright manner the terms of the settlement and how to exercise their right to participate in it, exclude themselves or object.

## II.    ARGUMENT

### A. Background

#### 1.  Procedural History

On January 17, 2020, Plaintiff filed a lawsuit individually and on behalf of a proposed class in this court captioned *Yasmine Lamar v. IQ Data International, Inc. and Draper and Kramer, Inc.,* Case No. 1:20-cv-377 (the "Lawsuit");

The Lawsuit included class and individual claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.  ("ICFA"). On July 23, 2020, Ms. Lamar filed her First Amended Complaint ("FAC"), removing Draper and Kramer, Inc. as a defendant and removing her ICFA claims due to an unexpected difficulty in establishing actual damages.

On August 20, 2020, IQDI filed its answer, defenses, and affirmative defenses, generally denying that Plaintiff had stated a claim or is entitled to any relief from IQDI either individually or on behalf of a class.

Thereafter, the Parties exchanged extensive sets of Interrogatories, Requests for Production, and Requests for Admission.  Plaintiff also issued a subpoena duces tecum to Draper & Kramer, the property manager which had been a defendant in this action and which had sought from her the attorney's fees in connection with her eviction that were later included in the balance IQDI was assigned and attempted to collect.  Following review of the Parties' and Draper & Kramer's responses, the resolution of disputed objections to same, and

review of documents produced, the Parties were able to effectively evaluate their respective chances of prevailing in the litigation and obtaining or defeating class certification.

On December 28, 2020, IQDI filed a Motion for Summary Judgment arguing, inter alia, that even if it had violated the FDCPA, any such violation was the result of a bona fide error notwithstanding the maintenance of reasonable procedures to prevent same, including but not limited to relying on Draper & Kramer's express warranties that all debts assigned for collection were legally due and owing. The date for Plaintiff's brief in opposition was abated pending an upcoming settlement conference with Hon. Magistrate Judge Susan E. Cox, but Plaintiff submitted arguments in opposition to IQDI's Motion for Summary Judgment in connection with mediation statements submitted to Judge Cox.

On January 12, 2021, Plaintiff filed a Motion to Compel Discovery, in part seeking information regarding the identity of the property managers and landlords that retained IQDI to collect rental debt on their behalf. This information was sought in order to determine whether IQDI had also attempted to collect attorney fees prohibited by Chicago ordinance from former tenants of other property managers and landlords. A hearing was set for January 19, 2021.

Negotiating in anticipation of the hearing on the Motion to Compel and then the impending mediation, the parties were able to agree upon most of the essential terms for a settlement of the class claims, including amending by stipulation the class definition to narrow it to cover only persons from whom Draper & Kramer had sought to collect attorney fees in connection with an eviction that were not awarded by the Court, while expanding it to include persons dunned within two years of filing of the original complaint herein. The Parties also agreed on a lump sum amount to be distributed to class members, certain actual damages, and

corrected credit reporting, procedures for delivering the Class Notice to class members, and costs of settlement administration.

The Parties attended remotely a settlement conference with Judge Cox on January 25, 2021, at which Judge Cox met several times with each party separately, reviewed the terms of settlement the Parties had tentatively agreed on, and ultimately brought them to a compromise regarding the amount of attorney fees and class representative service award that Defendant would not oppose being approved by the Court, as well as the scope of the release that class members would give.

**B. The Proposed Class Meets all the Requirements of Rule 23.**

The proposed class is defined by specific, objective criteria. Ms. Lamar's claims are typical of the class members, she is an adequate class representative, and she has retained experienced and qualified class counsel. The primary issues of law and fact in the Lawsuit are common to the class and predominate over any individual issues. A class action is superior because IQDI's practices allegedly harmed a group of tenants who have been evicted and are thus difficult to locate and are unlikely to bring individual actions. Class certification would be appropriate regardless of whether or not a settlement had been agreed upon. At this stage of the proceedings, however, Ms. Lamar simply requests that this Court find that it is likely that it can certify the class. Fed. R. Civ. P. 23(c)(1)(C).

**1. The Proposed Class**

The proposed class was defined in Ms. Lamar's First Amended Complaint ("FAC") as (a) all individuals (b) to whom IQDI sent a written communication (c) at any time during a period beginning January 17, 2019 and ending February 7, 2020 and (d) where IQDI sought to collect an amount which included attorney's fees in connection with an eviction action related to a rental

agreement for a dwelling unit located within the City of Chicago (e) in which attorney's fees had not been awarded by the court.

During settlement negotiations, the Parties agreed to limit the class definition to consumers whose accounts were referred to IQDI by Draper & Kramer, Inc. ("D & K"), the property management company that had requested attorney fees from Ms. Lamar. The Parties also agreed to extend the class period an additional year. Consistent with the Agreement, the proposed settlement class is now defined as:

Individuals (a) to whom IQDI sent a written communication (2) at any time during a period beginning two years prior to the filing of the Lawsuit and ending 21 days after the filing of the Lawsuit (3) where IQDI sought to collect an amount which included attorney's fees in connection with an eviction action related to a rental agreement for a dwelling unit managed or owned by D & K within the City of Chicago and (4) in which attorney's fees had not been awarded by the court.

While this definition is different than Plaintiff's original definition, it is well-established that district courts have discretion to modify proposed class definitions as appropriate, on motion or on their own initiative. See Fed. R. Civ. P. 23(c)(1)(C); *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015); *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 807 (7th Cir. 2013). Moreover, the definition may be modified without the filing of an amended complaint. The Seventh Circuit stated in *Chapman,* the "complaint must contain three things: a statement of subject-matter jurisdiction, a claim for relief, and a demand for a remedy". . . . "Class definitions are not on that list. Instead the obligation to define the class falls on the judge's shoulders under Fed.R.Civ.P. 23(c)(1)(B)." 796 F.3d 783, 785 (7th Cir. 2015) (citing *Kasalo v. Harris & Harris, Ltd.,* 656 F.3d 557, 563 (7th Cir.2011)). According to the *Chapman* court, the "judge may ask for

the parties' help, but motions practice and a decision under Rule 23 do not require the plaintiff to amend the complaint." *Id. See also, Wilson vs. Evanston, Illinois,* Case No. 14-cv-8347 (N.D. Ill. Aug. 30, 2017) (rejecting Defendant's argument that "Plaintiffs should have to amend their complaint to assert their proposed class definition[.]"); *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018) ("We . . . find no reversible error in the district court's decision to certify Beaton's two implied warranty claims. It is immaterial that these legal theories were not spelled out in the initial complaint."). A number of factors have led Plaintiff to revise the proposed class definition with the consent of Defendant. First, Plaintiff had sought discovery in order to attempt to ascertain whether there were additional evicted tenants from whom IQDI had sought to collect allegedly unlawful attorney's fees (Docket No. 82). A difficulty with Plaintiff's effort was that she had no way of knowing or readily determining how many – if any – additional property managers who were IQDI clients had attempted unsuccessfully to collect attorneys' fees not awarded by a Court in an eviction action, as D&K had done. By mid-January 2021, Ms. Lamar and IQDI had reached an impasse regarding the breadth of permissible discovery. Specifically, after meeting and conferring on several occasions regarding Defendant's objection that the requested discovery was unjustifiably burdensome, Ms. Lamar was forced to file a Motion to Compel discovery of IQDI's Chicago clients aside from D&K. The motion was pending at the time of settlement.

Another hurdle Ms. Lamar faced was with the way creditors supply information to IQDI. Because IQDI had only barebones account information from D&K, Plaintiff had to issue a subpoena duces tecum to D & K to attempt to determine whether the tenant whose account had been referred to IQDI had been evicted, whether there had been court proceedings, whether attorneys' fees were awarded in any such eviction proceeding, and whether they had been

charged attorneys' fees. Nor was this information entirely clear even from the records that had been subpoenaed from D & K, thus necessitating issuance of a Notice of Rule 30(b)(6) deposition to D & K. Ultimately, in order to identify class members in the D&K group alone for purposes of this settlement, IQDI was required to spend substantial time meeting and conferring with D&K. Thus, even if Plaintiff had prevailed on her motion to compel production of documents, she would have had to conduct additional depositions without any assuredness of finding a single other class member.

Thus, limiting the class to persons from whom D & K and IQDI were known to have attempted to collect attorney fees was entirely reasonable. IQDI, in turn, recognized that had Plaintiff continued to try to find persons within the original class definition, it would have incurred substantial attorneys' fees in connection with this effort as its other clients would have been required to respond to subpoenas and Rule 30(b)(6) depositions. This was a daunting prospect, both as to cost and the possible negative reaction of IQDI's other clients. It therefore agreed to an amended class definition encompassing, as to D & K cases, an additional year of collection efforts beyond that originally alleged.

2. **The Proposed Class Satisfies Each of the Requirements for Certification Under Rule 23(a).**

Fed. R. Civ. P. Rule 23(a) by its terms requires that to be certified, the proposed class be so numerous that joinder of all individual class members is impracticable (numerosity); that there are common questions of law and fact that affect all class members (commonality); that the proposed representative's claims are typical of those of the class (typicality); and, that both the named-representative and their counsel have and will continue to adequately represent the interests of the class (adequacy).

**The Numerosity Requirement is Satisfied**

The numerosity prerequisite enumerated in Rule 23(a) requires the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The standard of impracticability does not mean "impossibility," but only difficulty or inconvenience in joining all members of the class. *Doe v. Guardian Life Ins. Co. Of Am.*145 F.R.D. 466, 471 (N.D. Ill. 1992). The numerosity requirement is a "low threshold." *Garcia–Rubiera v. Calderon,* 570 F.3d 443, 460 (1st Cir.2009).

While there is not an exact number that needs to be met to satisfy the numerosity prong, there are several examples of classes being certified under similar fact patterns to the one here. For instance, this court recently certified a FDCPA class consisting of 18 members from whom the defendant allegedly misled class members by seeking to collect time-barred debt. *Harris-Stewart v. CGR Services, Inc.,*17-cv-4032 (August 20, 2018). Additionally, courts in this Circuit have certified classes as small as seventeen members as "sufficiently numerous that joinder is impracticable." *Allen v. Isaac,* 99 F.R.D. 45, 53–54 (N.D. Ill.), amended, 100 F.R.D. 373 (N.D. Ill. 1983) ("Forcing the 17 persons included in this class, each of whom has common claims and defenses, to separately pursue those claims and defenses cannot be justified practically or economically"). *See also, Markham v. White,* 171 F.R.D. 217, 221 (N.D. Ill. 1997) (35-40 class members); *Hendricks-Robinson v. Excel Corp.*, 164 F.R.D. 667, 671 (C.D. Ill. 1996) (38 class members).

While the Seventh Circuit recently denied certification of a class containing 37 members, it reasoned that "[s]ome classes may involve such large numbers of potential members that volume alone will make joinder impracticable" while "in other circumstances, *it may be that smaller classes than the one proposed here will face such high barriers to joinder that the im-practicability required by Rule 23(a)(1) will exist. The inquiry is fact and circumstance*

dependent, and future cases will require this careful line drawing." *Anderson v. Weinert Enters.,* 2021 U.S. App. LEXIS 2418 at \*10-11 (7th Cir. January 28, 2021) (emphasis added).

In *Anderson*, the class members were wage earners whose identity was known, with stable jobs and potentially a significant recovery available to them. *Id.* They all lived within a 50-mile radius of the courthouse where the suit was filed. *Id.* The Plaintiff provided no evidence that "naming as plaintiffs each of the predominantly local, current, and former employees of a northeast Wisconsin roofing company would be impracticable." *Id.* Here, it is undisputed that the thirty-eight class members were all evicted and so are likely housing insecure, financially insecure, and difficult to locate, making it impracticable for them to join together. They likely have limited resources to find and retain an attorney and their recovery would be relatively small to provide an incentive to bringing an individual or multi-party case – at most $1,000. As this court reasoned in *Allen, supra,* courts have considered a myriad of factors to support a finding of impracticability where the number of class members is small, including "geographic dispersion" and "the ability of the individuals to press their own claims, the practicality of forcing relitigation of common issues and the administrative difficulties which attend joinder." 99 F.R.D. 45, 53 (N.D. Ill. 1983). Moreover, the "relitigation of common issues necessarily increases the cost of litigation, whereas a proper class action is an economic and administrative savings device." *Id.*

In light of the characteristics of the members of this particular class discussed above, the Plaintiff has met her burden that the 38 D&K class members satisfy the numerosity requirement.

**The Commonality Requirement is Satisfied.**

The commonality prerequisite requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement necessitates a "common nucleus of operative fact" and it is satisfied "where the Defendant has engaged in some standardized

conduct towards the proposed class members." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *Franklin v. City of Chicago*, 102 F.R.D. 944, 949-950 (N.D. Il. 1984). Thus, where the defendant "engages in a single course of conduct that results in injury to the class as a whole, a common core of operative facts is usually present." *Johns v. DeLeonardis*, 145 F.R.D. 480, 483 (N.D. Ill. 1992).

IQDI allegedly engaged in unlawful behavior when it sought to collect from class members attorney fees incurred in connection with an eviction action that were not permitted by law, in violation of §§ 1692f(1), 1692e, 1692e(2), and 1692e(10). First Amended Complaint, Docket No. 38, pp. 5-6, ¶¶ 31-34. IQDI's alleged conduct affected Ms. Lamar and class members in a virtually identical manner. Ms. Lamar's and the class claims raise the same common issues: (1) whether IQDI is a debt collector under the FDCPA; (2) whether class members were charged attorney's fees or court costs in connection with their evictions from Chicago residential rental units; and (3) whether IQDI sought to collect those unlawful fees and costs. Thus, the commonality requirement is satisfied.

**The Typicality Requirement is Satisfied.**

The typicality prerequisite requires that the named plaintiff's claims be typical of those in the Class. Fed. R. Civ. P. 23(a)(3). However, Rule 23(a)(3) does not demand each proposed class member suffer the same injury as the class representative. *De La Fuente v. Stokley-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). Rather, a court looks to the defendant's conduct and the plaintiff's legal theory to satisfy the typicality requirement. *De La Fuente*, 713 F.2d at 233. Because the "issue of typicality is closely related to that of commonality," it is sufficient for the class members to "rely on the same commonality argument." *Mejdreck v. Lockformer Co.,* 2002 WL 1838141, 4 (N.D. Ill. E.D. Aug. 12, 2002).

The purpose of the typicality requirement is to "align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 311 (3d Cir. 1998). "The test for typicality, like commonality, is not demanding." *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993).

In this case, the proposed class claims all focus on IQDI's alleged violations of the FDCPA. Ms. Lamar and all class members are individuals who were evicted by Draper & Kramer from residential premises in Chicago from whom IQDI allegedly sought to collect unlawful attorneys' fees in connection with but not awarded in those evictions. Thus, the typicality requirement is satisfied.

**The Adequacy of Representation Requirement is Satisfied.**

The adequacy requirement under Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The N.D. Ill. has held that the adequacy test "is satisfied if: (i) the interests of the representative parties do not conflict with the interests of any class members; and (ii) the plaintiffs' counsel is qualified, experienced, and able to prosecute the action on behalf of the class vigorously." *In re Trans Union Corp. Privacy Litig.,* 2008 U.S. Dist. LEXIS 128501 at *24 (N.D. Ill. January 3, 2008).

Here, there is no conflict between the interests of the Ms. Lamar and the class, and the counsel she has chosen are practitioners who have diligently pursued this action and whose qualifications and experience in consumer law and class action litigation are easily

demonstrated. Ms. Lamar has the same interest as every other class member in maximizing the amount that IQDI will pay per class member in settlement of their claim for statutory damages for being subjected to IQDI's communications about debts not lawfully owed. She has also adequately represented any class member who, unlike her, has a claim for actual damages. IQDI has agreed to refund any such amounts.

Ms. Lamar is seeking a service or incentive award that is justified by her work as class representative. Such awards are routinely granted in class actions and do not create a conflict of interest. Class counsel has made it clear to Ms. Lamar that an incentive award is in the discretion of this Court. (Charlton Dec, EXHIBIT 2).

Proposed class counsel have acted diligently on behalf of the class, issuing and reviewing Defendant's responses to interrogatories, requests to produce documents and requests for admission to IQDI, noticing depositions of both IQDI and D & K, sending discovery dispute letters and filing a Motion to Compel, and nresponding to discovery issued by IQDI. Additionally, IQDI filed a Motion for Summary Judgment (supported by affidavit evidence) that argued that, even if it somehow violated the FDCPA (which it consistently denied), that violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Proposed class counsel responded to IQDI's position that it was entitled to this bona fide error defense, which would have insulated it from liability in this matter. When counsel obtained sufficient information from IQDI to determine the size of the class, the Parties reached an amicable class-wide settlement agreement, rather than proceeding with months if not years of litigation with its attendant costs, delay and uncertainty.

Ms. Lamar is represented by highly qualified counsel from two non-profit organizations. Andrea Bopp Stark of the National Consumer Law Center (NCLC) has engaged in civil litigation for over twenty years in Massachusetts, New Hampshire, and Maine. From 2008 to 2019, Stark practiced at the Molleur Law Office in Biddeford, Maine where she was lead counsel on over 50 complex consumer litigation matters. Since joining NCLC in June 2019, Stark has focused on fair debt collection issues and is a contributing author to the National Consumer Law Center's treatises on Fair Debt Collection, Mortgage Lending, Mortgage Servicing and Loan Modifications, and Home Foreclosures. (Stark Dec. EXHIBIT 3). Charles Delbaum of the National Consumer Law Center, is a litigator with 49 years of experience. Since joining the National Consumer Law Center in December of 2005, he has been counsel in more than thirty-five consumer class action cases, the majority of which have achieved court-approved settlements. He also is co-author of the National Consumer Law Center's Consumer Class Actions manual and of the litigation chapter in the National Consumer Law Center's treatise on Fair Debt Collection. (Declaration of Charles Delbaum, EXHIBIT 4). Mary Frances Charlton has practiced law for over seven years, one of which was devoted almost entirely to class FDCPA claims with the law firm of Edelman, Combs, Latturner & Goodwin, LLC in Chicago, Illinois. She currently represents youth experiencing homelessness in a variety of legal matters, including consumer rights issues, as an attorney with the Law Project of the Chicago Coalition for the Homeless ("CCH"). (Declaration of Mary Frances Charlton, EXHIBIT 2). Arturo Hernandez is an attorney with the Law Project of CCH and a 2012 graduate of the John Marshall Law School. Prior to joining CCH, Mr. Hernandez spent several years as a Staff Attorney with the Chicago Legal Clinic, Inc., where he represented clients in mortgage foreclosure cases. While at CCH, Mr.

Hernandez has been counsel of record in five federal actions (Declaration of Arturo

Hernandez, EXHIBIT 5).

Thus, both Ms. Lamar and her counsel are more than adequate to represent the putative

class, and the final requisite to certification under Rule 23(a) is satisfied.

### 3. The Proposed Class Satisfies Each of the Requirements for Certification under Rule 23(b).

Because the prerequisites of Rule 23(a) are satisfied, Ms. Lamar must next meet the

requirements of at least one subsection of Rule 23(b). In this case, Rule 23(b)(3) applies. Rule

23(b)(3) requires that "the questions of law or fact common to the members of the class

predominate over any questions affecting only individual members, and that a class action is

superior to the other available methods for the fair and efficient adjudication of the controversy."

### <u>The Predominance Test is Satisfied.</u>

"The predominance inquiry asks whether proposed classes are sufficiently cohesive to

warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo,* U.S. 136, S. Ct. 1036,

1045 (2016) (quoting *Amchem Prod., Inc. V. Windsor,* 521 U.S. at 623, 117 S. Ct. 2231 (June 25,

1997). "If resolution of some of the legal or factual questions that qualify each class member's

case as a genuine controversy can be achieved through generalized proof, and if these particular

issues are more substantial than the issues subject only to individualized proof," then the

predominance test is satisfied. *Roach v. L.T. Cannon Corp.,* 778 F.3d 410, 405 (2d Cir. 2015).

Moreover, the predominance test is "readily met in certain cases alleging consumer or securities

fraud or violations of the antitrust laws." Achem Prod., Inc., 521 U.S. at 625, 117 S.Ct. 2231

(June 25, 1997).

This case presents common issues of law and fact similar to those which predominated

over individualized issues in a number of cases decided in this Circuit. *See, e.g., Magee v.*

*Portfolio Recovery Assocs.,* 2015 U.S. Dist. LEXIS 14899, 2015 WL 535859, at *3-4 (N.D. Ill. 2015) (finding the issue of defendant's policy of sending allegedly misleading debt collection letters predominated over the common question of whether the class members felt deceived)*; Quiroz v. Revenue Prod. Mgmt., 252 F.R.D. 438, 444 (N.D. Ill. 2008)* (similar); *Pierre v. Midland Credit Management, Inc.,* 2017 U.S. Dist. LEXIS 61107, 2017 WL 1427070, at *9-10 (N.D. Ill. 2017) (finding defendants standard course of conduct towards each class member predominates over other questions such as damages); *Day v. Check Brokerage Corp.,* 240 F.R.D. 414, 419 (N.D. Ill. 2007) (finding that common question of whether debt collection letters defendant sent violated the FDCPA predominated other issues). *See also, Kremnitzer v. Cabrera & Rephen, P.C.,* 202 F.R.D. 239 (N.D. Ill. 2001) (granting certification of claims that collector failed to provide a thirty-day validation as required by the Fair Debt Collection Practices Act (FDCPA) and made uniform collection calls containing false threats of imminent arrest in violation of the FDCPA).

In this case, the claims of Ms. Lamar and the other class members all arise from IQDI's standardized conduct of allegedly attempting to collect debts not lawfully owed, *i.e.,* attorney's fees and costs unlawfully charged in connection with evictions from D & K-managed properties in Chicago. Although the Defendant's agreement to refund any attorney fees that were collected only affects certain individual class members, those amounts will be readily calculated and the common questions described above predominate.

**The Superiority Test is Satisfied.**

A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable

results." *Amchem*, 117 S. Ct. at 2246. Both of these goals would be achieved by this Court granting class certification here. Further, a class action is the superior method of proceeding in a case of this type in that it allows the plaintiffs to "pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). "[T]he high likelihood of a low per-class-member recovery militates in favor of class adjudication." *Dickens v. GC Services, L.P.*, 706 Fed. Appx. 529, 538 (11th Cir. 2017); *Rhodes v. Enhanced Recovery Co., LLC*, 328 F.R.D. 225, 231 (S.D. Ind. 2018) (finding superiority, noting that "given the relatively small recovery likely at issue for each consumer's claim, we are not persuaded that, even with the potential to recover attorney's fees in addition to damages, individual plaintiffs would be sufficiently incentivized to bring solo actions"); *Kremnitzer v. Cabrera & Rephen, P.C.,* 202 F.R.D. 239 (N.D. Ill. 2001) (where liability in FDCPA claims were "predicated on the same legal theory and the same alleged misconduct by [defendant] toward the class members. A class action appears to be a superior method of adjudication because of the modest amount of potential claims, the importance of notifying class members of their rights under the FDCPA, and general principles of judicial economy.").

In the Parties' agreement, each class member will receive relief that they otherwise would have been denied without the certification if this class. Accordingly, Ms. Lamar respectfully requests that the Court find that it is likely her Motion for Class Certification for settlement purposes only will be granted.

## C. THE SETTLEMENT AGREEMENT

### 1. Pecuniary Benefit for Class Members

A. The proposed Agreement states: "IQDI shall pay the Settlement Administrator $11,200.00 (the "Settlement Fund") to be used by the Settlement Administrator for settlement

checks in equal amounts to each Class Member" and that "[a]ny unclaimed or uncashed checks will be used to fund a second round of payments to Class Members who cashed their checks in a supplemental distribution, with additional payments to be continued so long as individual payments would exceed $10.00, taking into account the costs associated with calculating, preparing and distributing same. Any remaining funds will be used to defray the cost of settlement administration." The Agreement further provides that "with assistance from Draper & Kramer, Inc., IQDI will reduce any existing balances to strip out any of Draper & Kramer, Inc.'s attorney's fees, and it will furnish updated balances to any and all credit reporting agencies to reflect the reduced amount" and if "there is a negative balance or overpayment, reflecting that the class member paid attorney's fees, IQDI will issue refund payments, subject to a floor of $10.00."

Further, receipt of the payments by class members is reasonably assured because IQDI, working with D & K, has identified the class members and will provide their most recent addresses to the Settlement Administrator. The Settlement Administrator will then search the United States Postal Service National Change of Address (NCOA) database. The Notice will be mailed to those accounts. If any Notice is returned as undeliverable with no forwarding address, the Settlement Administrator will then perform a skip-trace using a service such as LexisNexis Accurint to determine and obtain a valid mailing address for the account at issue, and re-send the Notice to the new address. No claim form will be required. Instead, checks will simply be mailed by the Settlement Administrator to class members.

### 2. Costs of Notice and Settlement Administration

IQDI has agreed to pay the costs of the Settlement Administration. The content and service of the Notice is discussed below in Section C (6).

### 3. Service or Incentive Award to the Class Representative

The Agreement provides that "IQDI shall pay named Plaintiff, Yasmine Lamar $2,000.00 as a Class Representative Award for her time and efforts on behalf of the Settlement Class. Any such Award shall be in addition to the payment to which she is entitled as a class member." While the parties understand that any Class Representative Award is at the discretion of this Court, IQDI has agreed not to challenge the request for an award of $2,000 for Mr. Lamar.

As outlined in the declarations attached hereto, Ms. Lamar has met and conferred numerous times with class counsel and actively participated in this litigation. She met with Ms. Charlton to initiate her representation and to discuss a possible class action and exchanged correspondence and telephone calls when reviewing the proposed Complaint. Once the litigation began, there were meetings and correspondence with Class Counsel to formulate answers to IQDI's discovery requests, and Ms. Lamar actively participated in the decisions concerning the class settlement negotiations. She declined defendant's offer of an individual settlement in an amount greater than the award she now requests. Ms. Lamar also attended the January 25, 2021 class Settlement Conference. (Charlton Dec., EXHIBIT 2).

Incentive awards "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001); *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 875 (7th Cir. 2012). In deciding whether an incentive award is proper and, if so, in what amount, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

In 2018, this court approved a $5,000.00 incentive award in a Telephone Consumer Protection Act ("TCPA") case because, while the case "did not proceed very far before it settled[,]" the plaintiff "attached his name to the suit, thereby subjecting himself to the risk of discovery and a cost of award where judgment entered against him." *Douglas v. Western Union Co.,* 328 F.R.D. 204, 218-19 (N.D. Ill. 2018). *See also, Gehrich v. Chase Bank United States,* 316 F.R.D. 215 (N.D. Ill. 2016).

Hence, the facts that Ms. Lamar attached her name to this Lawsuit, assisted with the prosecution of her case at all stages, responded to discovery, and prepared for and attended the class settlement conference, justify the requested incentive award of $2,000.00. Her loyalty to the interests of the class is clear.

### 4. Attorney's Fees and Costs

The Settlement Agreement provides that Ms. Lamar "agrees not to seek more than $65,000.00 inclusive of attorney's fees and costs, and IQDI agrees not to oppose Plaintiff's application for an award that does not exceed these amounts." Plaintiff's counsel will file a motion justifying this request in light of the quality of the recovery obtained for the class and the time expended in this case on behalf of the Settlement Class.

Plaintiff is not requesting approval of a fee award at this time. As required by the Agreement, Plaintiff will provide further supporting documentation and briefing regarding her counsel's fees in a separate motion, which will be filed 60 days after the notice is sent to the Settlement Class members so that they can consider whether to opt-out or object to the settlement and/or the fees and will have that information prior to the deadline to do so.

### 5. Release

The Agreement provides that if "this Settlement is Finally Approved, each Class Member who does not specifically opt out of the Class as of the Effective Date of the Agreement or such other deadline established by the Court, releases and forever discharges the Released Parties of and from all causes of action, suits, claims, demands, liabilities, judgments, debts, charges, and damages that were made on behalf of the Class in the Litigation."

The scope of this release is appropriate and fair to class members because they will only be releasing claims that share the same factual predicate as the claims set forth in the Complaint: those involving IQDI seeking to collect unlawful attorneys' fees on D & K accounts during the class period. To be clear, however, they will be releasing claims for actual damages too. Any class member who wishes to pursue such damages, if any, that may have been incurred apart from the amounts IQDI has agreed to refund, may, however, exclude him or herself from the class.

### 6. Class Notice and Objection and Opt Out Rights

Subject to Court approval, notice of this Settlement as agreed by the parties in APPENDIX A to the Settlement Agreement will be mailed to class members at addresses which have been updated through the Notice of Change of Address database and also skip-traced via LexisNexis Accurint or a similar database. (Article IV). Further, the Settlement Administrator shall establish a dedicated toll-free phone number to respond to inquiries from Class Members.

Class Members are permitted to exclude themselves from the Settlement for any reason or no reason up to 10 days before the Final Approval hearing. Any class members who do not exclude themselves may file a written objection to the Settlement, stating the objection, supporting authority and exhibits, if any, at least 21 days before the Final Approval hearing.

Class Members who fail to timely object in the manner specified shall be deemed to have waived any objections and shall be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement.

### D.  FINAL APPROVAL OF THE SETTLEMENT IS LIKELY AND WARRANTS DISTRIBUTION OF A CLASS NOTICE

#### 1.  The class representative and class counsel have adequately represented the class.

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Proc. § 23(e). Under the 2018 amendments to Rule 23(e), the preliminary step in the settlement approval process is for the Court to determine, based on sufficient information provided by the parties as required by Rule 23(e)(1)(A), whether giving notice to the class is justified. Such justification is established by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B). The Rule also now provides that final approval of the proposed settlement may be granted "only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

On this motion, the Court need not reach a final determination on whether to approve the proposed Settlement Agreement pursuant to Rule 23(e)(2). That determination must follow notice to the class, a period of time for class members to object to or exclude themselves from the settlement, and a fairness hearing. Nonetheless, because the criteria for

determining whether class notice is justified is whether the Court is *likely* to approve the Settlement and certify the class for purposes of judgment based on the Settlement, the same factors four factors noted immediately above that must be addressed on the final approval motion are properly considered here. As discussed below, consideration of these factors supports preliminary approval of the Settlement and an Order directing notice to class members in the form and manner proposed by the parties, as set forth in the Settlement Agreement.

## 2. The proposed Agreement was negotiated at arm's length.

Arm's length negotiations occur when parties are independent and do not have a close relationship with each other, have equal bargaining power, and are not subject to undue pressure or influence from the other party. That was precisely the situation here. Apart from IQDI's debt collection activities on the account it was assigned from D &K, Ms. Lamar and Class Counsel had no prior relationship with IQDI or its attorneys.

In the course of this litigation, Ms. Lamar conducted a thorough investigation and completed substantial discovery, discussed above, before participating in settlement negotiations. The parties reached a discovery dispute that involved seeking discovery on landlord and property management accounts IQDI serviced aside from D & K's accounts. Recognizing that there was a path forward for class settlement if the parties agreed to limit the scope of this matter to D & K accounts, the parties chose to negotiate directly by phone and email exchanged directly between Plaintiff's counsel and IQDI's counsel. It was in this manner that IQDI agreed to extend the class period an additional year and also to provide each class member with a statutory damages payment of $300. The parties then participated in a judicial settlement conference to iron out the final details of their agreement as to the

class. Only then did they address Ms. Lamar's incentive award and her attorney's fees. This is the order in which the negotiations occurred.

### 3. The relief provided for the class is readily available, fair, and adequate.

Class members who can be located will receive a check for an equal share of $11,200, or approximately $300.00 per class member

This relief is fair, in part because of the risk to the class of an adverse decision on Defendant's summary judgment motion. Moreover, an award under the FDCPA depends upon the fact finder's evaluation of a number of factors and is never guaranteed to be the maximum of $1,000 per person. If this case were to go to trial, one of the factors that this Court would consider is "the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k. IQDI's position is that its collection efforts, to the extent unlawful, were the result of bona fide error. Even if the finder of fact concluded the collection of attorneys' fees did violate the FDCPA, it is possible that the finder of fact would not find intentional noncompliance and therefore award class members less than the $1,000 statutory maximum. $300 per class member is fair under the circumstances.

### 4. The proposal treats class members equitably relative to each other.

Every class member who can be located will receive approximately the same statutory recovery. Class members who cannot be located will, for that reason, receive nothing, but they will likewise not release their claims against IQDI.

## CONCLUSION

For the foregoing reasons, the parties ask the Court to grant preliminary approval of the proposed settlement and to order notice in the form attached to class members via first class U.S.

Mail. A Proposed Order is attached as EXHIBIT 6.  The parties propose the following dates as deadlines:

Deadline for mailing notice to the class members: 28 days from the date of the Preliminary Approval Order.

Deadline for Objections: 21 days prior to Date of Final Fairness Hearing.

Deadline for Exclusions: 10 days prior to Date of Final Fairness Hearing.

Deadline for a Joint Motion for Final Approval and Plaintiff's Motion for Attorneys' Fees: 10 days prior to Date of Final Fairness Hearing.

Deadline for Hearing Plaintiff's Motion for Attorneys' Fees: the Date of the Final Fairness Hearing.

Further, to permit compliance with CAFA, 28 U.S.C. § 1715, the parties request that the Fairness Hearing be set as soon as reasonably possible following 100 days from the date of filing of the Motion for Preliminary Approval.

Dated: **March 11, 2021**


Respectfully submitted,

_s/ Mary Frances Charlton_
Mary Frances Charlton
Arturo Hernandez
Law Project of the Chicago Coalition for the Homeless
70 E. Lake St. Ste. 720
Chicago, IL 60601
312-641-4140
maryfrances@chicagohomeless.org
arturo@chicagohomeless.org

_/s/ Andrea Bopp Stark_
Andrea Bopp Stark
Charles Delbaum
National Consumer Law Center

7 Winthrop Square
Boston, MA 02110-1245
617-542-8010
astark@nclc.org
cdelbaum@nclc.org

*For the Plaintiffs*


*s/ Paul Gamboa*
Paul Gamboa
Christina Spiezia
Gordon & Rees
One North Franklin
Suite 800
Chicago, IL 60606
pgamboa@grsm.com
cspiezia@grsm.com


## CERTIFICATE OF SERVICE


I hereby certify that on March 11, 2021, I electronically filed the above Joint Motion for Preliminary Approval with the Clerk of the Court, using the CM/ECF system, which will provide service of such filing via Notice of Electronic filing (NEF) to all NEF parties registered with the CM/ECF system.


*s/ Mary Frances Charlton*
Mary Frances Charlton
Law Project of the Chicago Coalition for the Homeless
70 E. Lake St. Ste. 720
Chicago, IL 60601
312-641-4140
maryfrances@chicagohomeless.org

1204478/57037836v.1