IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YASMINE LAMAR, on behalf of plaintiff and a class,<br><br>Plaintiff,<br><br>Vs.<br><br>IQ DATA INTERNATIONAL, INC.,<br><br>Defendant. | Docket No. 1:20-cv-377 |

**JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff Yasmine Lamar, on behalf of herself and all others similarly situated, and defendant, IQ Data International, Inc., ("IQDI") jointly move this Court to enter an order granting final approval of the settlement agreement reached by the parties in this matter.

### Introduction

The Parties have negotiated, and the Court has preliminarily approved a settlement that will fully resolve this consumer class action. (Dkt. # 96). A copy of the Settlement Agreement is on file with the Court and will hereinafter be referred to as "Settlement Agreement." (Dkt. #91-1). The proposed Settlement Agreement provides significant monetary relief to class members. Each class member will receive a check for $287.17 as statutory damages, and any class members who suffered actual damages will receive a refund of such damages.

Plaintiff alleged that class-wide violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (FDCPA) occurred when IQDI sent written communications to former tenants seeking to collect attorney's fees in connection with evictions from Chicago properties

owned or managed by Draper & Kramer, Inc. ("D & K"), where such fees were not awarded by the court, in violation of Chicago Mun. Code Ch. 5-12-180. The Settlement Agreement requires IQDI to pay the Settlement Administrator $11,200.00 (the "Settlement Fund") to be used by the Settlement Administrator for settlement checks in equal amounts to each Class Member. Any unclaimed or uncashed checks will be used to fund a second round of payments to Class Members who cashed their checks in a supplemental distribution, with additional payments to be continued so long as individual payments would exceed $10.00, taking into account the costs associated with calculating, preparing and distributing same. Any remaining funds will be used to defray the cost of settlement administration. In addition, with assistance from D & K, IQDI will reduce any existing balances to strip out any of D & K's attorney's fees, and it will furnish updated balances to any and all credit reporting agencies to reflect the reduced amount. In the event there is a negative balance or overpayment, reflecting that the class member paid attorney's fees, IQDI will issue refund payments, subject to a floor of $10.00. Finally, if approved by the Court, IQDI shall pay named Plaintiff, Yasmine Lamar an additional $2,000.00 as a Class Representative Award for her time and efforts on behalf of the Settlement Class, as well as no more than $65,000 in attorney's fees.

This Settlement Agreement is now subject to final approval by the Court. In accordance with the Court's Preliminary Approval Order, notice of the settlement was mailed to class members within 30 days of the Preliminary Approval Order. See Preliminary Approval Order Approving Class Action Settlement, (Dkt. #96), and Declaration of Dorothy Sue Merryman, the Settlement Administrator (attached hereto as Exhibit 1). The Notice was received by 40 of the 43 members. (Dorothy Sue Merryman Dec. ¶8) No one has objected to the settlement, and only one class member has elected to opt out. (Dorothy Sue Merryman Dec. ¶9) Because there

are no objections to the Settlement, and because IQDI joins in the motion for final approval, the motion should be treated as unopposed.

The Settlement Agreement reflects a compromise of the Parties' positions for the purpose of resolving, without further litigation, all issues and claims relating to the allegations made in this case on behalf of all Settlement Class Members. As demonstrated below, the Settlement negotiated by the Parties is fair, adequate, and reasonable, and provides a substantial benefit to the Settlement Class. By separate motion, Plaintiff's counsel also request approval of attorneys' fees and costs totaling $65,000, as well as an incentive payment of $2,000 to the Named Plaintiff. No Settlement Class Member has objected to these requested awards. Approval of the settlement's terms for payments and other benefits to class members is not contingent on approval of these separate requests.

The Parties request that the proposed order attached hereto as Exhibit B be entered. The order will fully dispose of this matter.

## I. Procedural Background

The Plaintiff filed a lawsuit individually and on behalf of a proposed class in this court on January 17, 2020, captioned *Yasmine Lamar v. IQ Data International, Inc. and Draper and Kramer, Inc.,* Case No. 1:20-cv-377 (Dkt. # 1). The complaint included class and individual claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("ICFA"). On July 23, 2020, Ms. Lamar filed her First Amended Complaint, removing Draper and Kramer, Inc. as a defendant and removing her ICFA claims (Dkt. # 48).

On August 20, 2020, IQDI filed its answer, defenses, and affirmative defenses, generally denying that Plaintiff had stated a claim or is entitled to any relief from IQDI either individually or on behalf of a class.

3

After extensive discovery, detailed in the Plaintiff's Motion for Preliminary Approval (Dkt. # 91), IQDI filed a Motion for Summary Judgment on December 28, 2020, A settlement conference with the Hon. Magistrate Judge Susan E. Cox was scheduled for January 25, 2021, and the Plaintiff provided arguments in opposition to summary judgment in connection with her mediation statement to Judge Cox. The Plaintiff also filed a Motion to Compel Discovery (Dkt. #83) on January 12, 2021. The parties were subsequently able to negotiate the essential terms of a settlement and finalized these with the assistance of Judge Cox at and after the settlement conference.

On April 8, 2021, this Court granted preliminary approval of a proposed class settlement between the parties and preliminarily certified a class for settlement purposes. (Dkt. # 96). Notice was subsequently issued to all class members by first class mail, as discussed below.

## II. The Terms of the Settlement

The key terms of the Parties' Settlement Agreement (Dkt. # 91-1) are as follows.

1. *Settlement Class.* The Settlement Class consists of all individuals (1) to whom IQDI sent a written communication (2) at any time during a period beginning two years prior to the filing of this action and ending 21 days after the filing of this action and (3) where IQDI sought to collect an amount which included attorney's fees in connection with an eviction action related to a rental agreement for a dwelling unit managed or owned by D & K within the City of Chicago (4) in which attorney's fees had not been awarded by the court. Originally, plaintiff had included a broader class definition, including former tenants of units managed or owned by other companies than D & K, but discovery revealed that ascertaining members of the broader class would be a difficult and uncertain task. As a result, plaintiff chose to accept a bird in the hand for two in the bush. Such revisions to class definitions are routine as a class action

proceeds. "Litigants and judges regularly modify class definitions." *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005). *See also In re* Motorola Sec. Litig., 644 F.3d 511, 518 (7th Cir. 2011) ("[A] district court has the authority to modify a class definition at different stages in litigation.").

    2. *Monetary Relief*: Following Final Approval, if granted by the Court, IQDI will pay the Settlement Administrator $11,200.00 to be used for settlement checks in equal amounts to each Class Member who has not opted out of the class, will correct any accounts showing attorney's fees being owed, and refund any attorney's fees collected from class members. IQDI will also correct credit reporting as necessary. Separately, if approved by the Court, IQDI will pay up to $2,000 as an incentive award for the Class Representative, and $65,000 in attorney's fees and costs. (*See* Settlement Agreement, Dkt. # 91-1, Articles III and VIII)

    3. *Notice and Administration*: The Settlement Administrator, Dorothy Sue Merryman, mailed by first class mail a notice to Settlement Class Members in accordance with the schedule contained in the Preliminary Approval Order, and the terms of the Agreement on May 7, 2021 (*See* Declaration of Dorothy Sue Merryman, Exhibit 1). The costs of notice and administration were paid by IDQI. (Settlement Agreement, Article IX). The form of Notice was filed as part of the Preliminary Approval Motion (Dkt. # 91-2) and approved by the Court on April 8, 2021 (Dkt. # 96). A copy of the mailed Notice is attached as EXHIBIT 1 to the Declaration of Dorothy Sue Merryman, Exhibit A. A total of 43 notices were mailed after addresses were updated using the National Change of Address database (Declaration of Dorothy Sue Merryman Exhibit A). Notices that were returned were re-mailed when an updated address could be obtained through a skip tracing service. Of these, 3 did not reach the intended class member. In total, 40 notices were mailed successfully. (Exhibit A). The

5

$11,200.00 settlement fund will be distributed equally to each class member who has been located, resulting in payments of $287.17 to each.

    4. *Attorneys' Fees and Costs*: The Agreement provides that Class Counsel may seek up to $65,000 in attorneys' fees and costs to be paid by IQDI from the settlement proceeds. (Settlement Agreement, Article VIII). IQDI has agreed not to object to a request for this amount, which will be paid by IQDI if awarded by the Court, subject to the terms of the Settlement. Plaintiff has provided supporting documentation and briefing regarding Class Counsel's fees in a separate motion, which was filed concurrently with this current motion and within 60 days after the Notice was sent to the Settlement Class Members, as required by the Preliminary Approval Order.

    5. *Distribution of Uncashed Checks*: Settlement payments that are issued in connection with this Agreement which remain unclaimed or uncashed by a class member after 120 days of issuance will become void, and IQDI and/or the Settlement Administrator shall have no further payment obligations to any such class members. Any unclaimed or uncashed checks will be used to fund a second round of payments to Class Members who cashed their checks in a supplemental distribution, with additional payments to be continued so long as individual payments exceed $10.00. Any remaining funds will be used to defray the cost of settlement administration.

    6. *Release*: Settlement Class Members will release any and all claims against the "Released Parties" including IQDI and Draper and Kramer, arising out of, related to, or involving the violations that were alleged or could have been alleged by Plaintiff in the "Litigation:" *Yasmine Lamar v. IQ Data International, Inc.*, Case No. 1:20-cv-377, N.D. Ill.(Settlement Agreement, Article X). Each Class Member who did not specifically opt out of

6

the Class as of the Effective Date of the Agreement or such other deadline established by the Court, also releases and forever discharges those claims.

7. *Right to Opt Out or Object*: Settlement Class Members had until June 15, 2021, to object to the Settlement Agreement, and had until June 26, 2021, to opt out of the Settlement Agreement. (Exhibit 1). The Notice contained opt-out instructions for Settlement Class Members who wished to be excluded from the Settlement and instructions for how to object. No Class Member has objected to the Settlement Agreement, and only one Class Member has elected to opt out. (Exhibit A).

### III. The Court Should Grant Final Approval of the Settlement

#### A. The Standards for Final Approval Requires a Finding That the Settlement Is Fair, Reasonable, and Adequate Based on the Relevant Factors

The settlement of a class action that binds class members requires court approval. Fed. R. Civ. P. 23(e) (herein referred to as Rule 23(e)). Under the 2018 Amendments to Rule 23(e), a district court can approve such a settlement "only after a hearing and only on a finding that it is fair, reasonable, and adequate." *Id*. The Amendments require the Court to consider specific factors listed in the Rule. Plaintiff will discuss these factors below, as well as the factors mandated by Seventh Circuit precedent, to the extent these are not subsumed in the Rule's factors. See e.g., *Charvat v. Valente*, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019).

Amended Fed. R. Civ. P. 23(e)(2)(C) provides that the court must determine whether a settlement meets this standard of fairness, adequacy, and reasonableness by considering whether (1) the class representative and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other. *Id*. For the third prong regarding whether the relief is adequate, the court considers (i) the costs, risks, and delay of

7

trial and appeal, (ii) the effectiveness of the proposed method of distribution, (iii) the terms of any proposed award of attorney's fees, including timing of payment, (iv) and any agreements made in connection with the settlement.

In addition, the Seventh Circuit considers (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the amount of opposition to the settlement; (3) the reaction of members of the class to the settlement; (4) the opinion of competent counsel; and (5) stage of the proceedings and the amount of discovery completed. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation*, 332 F.R.D. 202, 216 (N.D. Ill. 2019). Importantly, this Court found that the proposed Settlement Agreement is likely to be found fair, reasonable, and adequate and granted preliminary approval. With no objections to the Settlement having been raised, there is no reason to question this earlier decision. (Dkt. # 96). Nevertheless, because these inquiries of fairness, reasonability, and adequacy go to the heart of whether to approve the settlement, we reiterate and expound upon the ways in which the Agreement warrants final approval below. Plaintiff will first address the 23(e)(2)(C) factors.

**1. The class representative and class counsel have adequately represented the class**

Rule 23(e)(2)(A) requires that the class representatives and class counsel have adequately represented the class. This aligns with Rule 23(a)(4)'s requirement of the class representative to "fairly and adequately protect the interests of the class." A settlement satisfies the two-part inquiry of a representative and counsel's adequacy when "(i) the interests of the representative parties do not conflict with the interests of any class members; and (ii) the plaintiffs' counsel is qualified, experienced, and able to prosecute the action on behalf of the class vigorously." *In re Trans Union Corp. Priv. Litig.*, 2008 WL 11358136 (N.D. Ill. Jan. 3, 2008) (citing *Andrews v. Bechtel Power*

8

*Corp.*, 780 F.2d 124, 130 (1st Cir.1985)). *See also Hale v. State Farm Mutual Automobile Insurance Company*, 2018 WL 6606079 *3(S.D. Ill 2018).

The parties' Joint Motion for Preliminary Approval of the Class Settlement assured this court that (i) there is no conflict of interest between Ms. Lamar and the other class members and (ii) her counsel has diligently pursued this action according to their qualifications and experience as practitioners in consumer law and class action litigation. In response to that motion, this Court examined whether it would likely be able to approve the Settlement. (Dkt. # 96). In its analysis, this Court found that the Plaintiff and Class Counsel "fairly and adequately represent the Settlement Class." ( Dkt. # 96). The Order further stated that the Plaintiff "fairly and adequately protects and represents the interests of all members of the Settlement Class, and Plaintiff's interests are aligned with the interests of all other members of the Settlement Class." (Dkt. # 96). There is no reason to re-visit this finding. This factor thus favors approval of the Settlement Agreement.

**2. The proposed Settlement was negotiated in good faith at arm's length**

Arm's length negotiations ensure non-collusiveness in the process of achieving a fair settlement, and the presence of such "strongly favors final approval." *Hale v. State Farm Mut. Auto. Ins. Co.*, *2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)*. A settlement reached at arm's length by experienced, capable counsel after meaningful discovery carries a presumption of fairness. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,* 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012*)*. A "mediation session with an experienced mediator" further assures the court of the settlement's fairness. See *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.,* 212 F.R.D. 400, 410 (E.D. Wis. 2002). Together, conducting sufficient discovery, and engaging in mediation with a neutral third party helps to assure a "truly adversarial bargaining process" free of the collusiveness that the arm's length

9

requirement seeks to guard against. William B. Rubenstein, 4 NEWBERG ON CLASS ACTIONS § 13:50 (5th ed. 2020).

This Settlement Agreement was achieved by professional and experienced attorneys from respected nonprofit, public interest legal organizations. They submitted mediation documents to the Hon. Magistrate Judge Susan E. Cox, who then conducted a settlement conference, and eventually mediated a compromise. No one objected to the fairness of these negotiations or the result they produced. During negotiations, the Plaintiff agreed to limit the class definition to consumers whose accounts were referred to IQDI by D & K only, and IQDI in return agreed to extend the class period an additional year beyond the one-year period applicable to claims under the FDCPA. IQDI also agreed to provide each class member with a statutory damages payment of $300. IQDI represented in good faith at the time that to the best of its ability to determine, there were 38 class members, so the parties agreed to a total payment of $11,200 to the class. This sum will be distributed to all class members who can be located, and have not opted out, which now turns out to be 39 members. (Exhibit A) Thus each class member will receive $$287.17 as an initial payment, with the possibility of some supplementation if any of the first round of checks is not cashed.

This factor too favors approval of the Settlement Agreement.

### 3. The relief provided for the class is adequate

In assessing the adequacy of the relief, the court must consider (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of the proposed method of distribution, (iii) the terms of any proposed award, (iv) and the agreements made in connection with the settlement. Fed. R. Civ. P. 23(e)(2)(C). The following subsections describe the ways in which the Settlement Agreement provides adequate relief in accordance with these considerations.

    i.    <u>The Costs, Risks, and Delay of Trial and Appeal</u>

10

Without the settlement, plaintiffs bear the cost and delay of further litigation as well as the risk of an adverse outcome. To adequately and fairly dispose of a case, the benefit of a settlement must outweigh the costs, risks, and delay of continuing the litigation. *Charvat v. Valente*, *supra*, at *5. To do so, the court must estimate the likely outcome of the plaintiff's claims to ascertain whether there is real risk of further costs, delay, or ultimate non-recovery. Id. This is not an exact science, as "[a] high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 285 (7th Cir. 2002).

The costs and delay of further litigation present the same burden on the class as in any other dispute. Trials are expensive and time consuming, requiring the parties to call witnesses, accrue more legal fees, and further burden the court's docket. A settlement allows both parties to avoid the compounding cost and energy associated with lengthy litigation, which may also extend to appeals.

Moving forward with litigation also presents risk of non-recovery, notably through the chance of an adverse decision on Defendant's summary judgment motion. The gist of Defendant's motion was that IQDI reasonably relied on the written assurance of Draper & Kramer that the amounts referred to IQDI for collection were due and, under applicable law, properly owed. Further, IQDI asserted that this reliance constituted a procedure reasonably adapted to avoid an error such as the one alleged by Plaintiff. *See Abdollahzadeh v. Mandarich Law Grp., LLP*, 922 F.3d 810, 815 (7th Cir. 2019). IQDI noted that courts in this district and elsewhere have held that "Defendants' reliance on [a creditor's] representation might establish that the error was unintentional and bona fide." *Kasalo v. NCSPLUS Inc.*, 2011 WL 2582195, at *4 (N.D. Ill. June 27, 2011).

11

Moreover, an award of statutory damages under the FDCPA depends upon the fact finder's evaluation of a number of factors and is often less than the maximum of $1,000 per person. 15 U.S.C.A. § 1692k(a)(2)(A). If this case were to go to trial, one of the factors that this Court would consider is "the extent to which such noncompliance was intentional." See *Diehm v. Messerli & Kramer, P.A.*, 2020 WL 57683 (W.D. Wis. Jan. 6, 2020). IQDI has provided documentary evidence that Draper and Kramer had provided the assurance noted above. Thus even if the finder of fact concluded that the collection of attorneys' fees did violate the FDCPA, it is possible that the finder of fact would not find intentional noncompliance and therefore award class members less than the $1,000 statutory maximum. At $287.17 per class member, the Settlement Agreement guarantees a fair percentage of the statutory maximum, which precludes the possibility of receiving nothing or substantially less following an unfavorable pretrial judgment, trial verdict, or appellate decision. This factor thus favors approval of the Settlement Agreement.

    ii.    <u>Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims</u>

The effectiveness inquiry ensures that the distribution of relief is "claimant-friendly, efficient, cost-effective, proportional and reasonable under the particular circumstances." *Hale v. State Farm Mut. Auto. Ins. Co., supra.* The parties have agreed on a method of distribution that is as simple, effective and straightforward as can be. Checks will be sent by first class mail to all class members who can be located, without need for submission of a claim form or other data. This factor thus favors approval of the Settlement Agreement.

    iii.    <u>The Terms of any Proposed Award of Attorneys' Fees, Including Timing of Payment</u>

12

For terms, the parties refer the Court to the Motion and Memorandum in Support of Attorneys' Fees, Costs, and an Incentive Award filed contemporaneously with this Motion. Payment of any approved amounts will be made only if and when payments are also made to class members. This factor thus favors approval of the Settlement Agreement.

      iv.      <u>Any Agreement Required to Be Identified Under Rule 23(e)(3)</u>

The external agreement factor is only applicable if there is an agreement between the parties, other than the Settlement itself, for the court to consider. *Hale v. State Farm Mut. Auto. Ins. Co., supra.* Here, there are no other agreements between the parties other than the Settlement Agreement. The only agreement with a third party is the agreement Draper & Kramer made to assist IQDI in the identification and location of class members. This factor is thus neutral in the court's assessment of the Settlement Agreement.

      **4.**      **The proposal treats class members equitably relative to each other**

A settlement in which all class members are entitled to equal treatment and their proportional share supports an inference of reasonably equitable treatment. *Bills v. TLC Homes Inc.*, 2020 WL 5982880 (E.D. Wis. Oct. 8, 2020). The ability to opt out as well as lack of objection also supports this inference. *Snyder v. Ocwen Loan Servicing, LLC*, 2018 WL 4659274 (N.D. Ill. Sept. 28, 2018).

In regard to this Agreement's relief, Class members who can be located will receive a check for an equal share of the class settlement fund $11,200—approximately $287.17 per class member. Class members who cannot be located will, for that reason, receive nothing, but they will likewise not release their claims against IQDI. No class member has objected to the equality of payment of statutory damages, and all have had the opportunity to opt out. While a few class members may also receive a refund if they paid Draper & Kramer's attorney's fees in

13

connection with their eviction, this does not make the settlement inequitable. On the contrary, these are the only class members who have suffered an out-of-pocket loss from Defendant's conduct.

The factors enunciated in *Wong v. Accretive Health, Inc., supra*, likewise favor approval of the proposed settlement. These include:

### 5. There is no opposition to the Settlement Agreement

No class member has objected to this Settlement Agreement. The lack of protest by those bound to the Agreement denotes the fairness of its terms.

### 6. The stage of the proceedings and discovery at the time of the Agreement provided ample materials to evaluate the claim's merits

The stage of proceeding at which the parties came to the Agreement indicates "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Charvat*, 2019 WL 5576932, at *8. Early-stage settlements are presumed fair when "the discovery and investigation conducted by class counsel prior to entering into settlement negotiations was extensive and thorough ...." *Isby*, 75 F.3d at 1200. Ms. Lamar filed this claim over a year-and-a-half ago. Since then, the parties exchanged interrogatories and requests for documents, and plaintiff also issued requests to admit, and both sides responded with answers and documents. Plaintiff also subpoenaed and received documents from Draper & Kramer, and had scheduled its 30(b)(6) deposition when the case settled. This extensive discovery allowed counsel to evaluate the potential benefits and risks of proceeding with the litigation, which in turn allowed them to come to the mutual conclusion that a Settlement would be both desirable and tenable. Judge Cox's participation in the mediation ensured that the court could also evaluate the substantive claims and potential for compromise. The merits of the claim and its

14

substantial evidence have been thoroughly considered by both parties, ensuring a fair compromise that weighs in favor of approval.

> 7. **Qualified counsel approves of the Agreement**

This court is "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982). A "unanimous and strong endorsement...supports the fairness, reasonableness, and adequacy of the proposed Settlement. *Hale v. State Farm Mut. Auto. Ins. Co., supra*, (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982)). Here, counsel for the Plaintiff and Defendant support this agreement. Plaintiff's counsel's qualifications are set forth in the Declarations attached to their Motion for Attorney's Fees and Costs, while defense counsel includes attorneys highly experienced in FDCPA and complex litigation. This factor further weighs in support of the Settlement Agreement's final approval.

**IV.     All Settlement Class Members Were Given Proper and Reasonable Notice**

The Settlement provided for reasonable and adequate notice to Settlement Class Members. Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.*" Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1985). Sending notice by first class mail to class members identifiable by reasonable means fulfills this requirement of adequate notice. See *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 798, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ("fully descriptive notice [which] is sent first-class mail to each class member, with an explanation of the right to "opt out," satisfies due process.").

The notice, approved by this Court, was clear, straightforward and sufficiently detailed to allow Settlement Class Members to determine the potential costs and benefits involved by participating in the Settlement. It outlines the nature of the case and the remedies offered by the

Settlement, and provides clear and conspicuous notice of the Settlement Class Member's alternative rights to object or opt out.

Notice of the Settlement was mailed, per this Court's order, to all Settlement Class Members by first class mail. (Declaration of Dorothy Sue Merryman) A total of 43 notices were mailed to identified Class Members. (Declaration of Dorothy Sue Merryman) Upon receipt of an undeliverable notice, if there was a forwarding address, the Administrator would forward to the address and if not, the Administrator conducted a skiptrace search. (Declaration of Dorothy Sue Merryman) If a match was found, the notice was re-mailed to the new address. (Declaration of Dorothy Sue Merryman) The Administrator received 6 Notices returned and was able to locate a new address for 3 returned Notices. (Declaration of Dorothy Sue Merryman).

### V. The Settlement Class Is Appropriately Certified

Class certification is appropriate if (1) the class is sufficiently numerous to make joinder of all parties impracticable, (2) there are common questions of law and fact, (3) the claim of the named plaintiff is typical of the claims of the class, and (4) the named plaintiff will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a). In addition, a plaintiff must show that common questions of law and fact predominate over individualized questions, and that the class action is superior to other available methods for adjudication of the controversy. Fed. R. Civ. P. 23(b). For the reasons set forth more fully in the Motion for Preliminary Approval incorporated herein, all of the Rule's requirements are met in the settlement class for which the Plaintiff requests certification. Rather than restate those reasons here, the parties refer the Court to the Motion for Preliminary Approval Dkt. # 91, pp. 8-15 and the Court's Preliminary Approval Order, Dkt. # 96 at par. 5.

16

## VI. Plaintiff Submits That the Requested Attorneys' Fees Are Reasonable Under the Lodestar Method

The Plaintiff refers the Court to the Motion and Memorandum in Support of Attorneys' Fees, Costs, and an Incentive Award filed contemporaneously with this Motion.

## VII. Plaintiff Submits That the Requested Incentive Award Is Also Proper

The Plaintiff refers the Court to the Motion and Memorandum in Support of Attorneys' Fees, Costs, and an Incentive Award filed contemporaneously with this Motion.

## Conclusion

The Settlement is fair and reasonable and no Settlement Class Member has objected. It meets all of the requirements for final approval. For all of the foregoing reasons, the parties respectfully request that this Court certify the Settlement Class and approve the Settlement.

Dated: July 6, 2021

Respectfully submitted,

/s/ Arturo Hernandez
Arturo Hernandez
Law Project of the Chicago Coalition for the Homeless
70 E. Lake St. Ste. 720
Chicago, IL 60601
312-641-4140
arturo@chicagohomeless.org


/s/ Andrea Bopp Stark
Andrea Bopp Stark
Charles Delbaum
National Consumer Law Center
7 Winthrop Square
Boston, MA 02110-1245
617-542-8010
astark@nclc.org
cdelbaum@nclc.org

*For the Plaintiffs*

17

/s/ Paul Gamboa
Paul Gamboa
Christina Spiezia
Gordon & Rees
One North Franklin
Suite 800
Chicago, IL 60606
pgamboa@grsm.com
cspiezia@grsm.com

*For the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2021, I electronically filed the above Joint Motion For Final Approval of Settlement Agreement With Incorporated Memorandum Of Law with the Clerk of the Court, using the CM/ECF system, which will provide service of such filing via Notice of Electronic filing (NEF) to all NEF parties registered with the CM/ECF system.

/s/ Arturo Hernandez
Arturo Hernandez
Law Project of the Chicago Coalition for the Homeless
70 E. Lake St. Ste. 720
Chicago, IL 60601
312-641-4140
arturo@chicagohomeless.org

18