**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| YASMINE LAMAR, | ) | |
| on behalf of plaintiff and a class, | ) | |
| | ) | |
| Plaintiff, | ) | Docket No. 1:20-cv-377 |
| | ) | |
| vs. | ) | |
| | ) | |
| IQ DATA INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF AN AWARD OF ATTORNEYS' FEES, COSTS, AND AN INCENTIVE AWARD**

Plaintiff Yasmine Lamar ("Ms. Lamar"), respectfully requests that the Court approve an award of attorneys' fees and costs in the amount of $65,000 and an incentive award in the amount of $2,000. In support thereof, the Plaintiff states as follows:

## I. Introduction

The Settlement Agreement in this case provides that Plaintiff agrees not to seek more than $65,000 in attorneys' fees and costs, and IQ Data International, Inc. (IQDI) agrees not to oppose Plaintiff's application for an award that does not exceed these amounts. (Dkt # 91-1) The full $65,000 is warranted here, given the recovery obtained for the class and the time expended in this case on behalf of the Settlement Class.

Plaintiff's request for an award of $65,000 in attorneys' fees and costs incurred in this case by her counsel is supported by the Declarations of Andrea Bop Stark (attached hereto as Exhibit A), Charles Delbaum (attached hereto as Exhibit B), and Mary Frances Charlton (attached hereto as Exhibit C) with supporting exhibits itemizing the time spent on this case and the costs incurred in representing the class.

The requested amount represents a negative multiplier -- $81,106.25 less than the lodestar. The lodestar counsel could request after the exercise of billing judgment, would be $146,106.25.

Class Counsel also incurred $767 in litigation costs, which is included in the $65,000 request. Plaintiff also seeks an incentive payment of $2,000 to Plaintiff for her efforts on behalf of the Settlement Class.

## II. Background

### A. Plaintiff and her counsel vigorously advocated on behalf of the class for more than a year.

A detailed description of the history of this litigation is contained in the Preliminary Approval Motion (Dkt. # 91). The description in the Preliminary Approval Motion reflects that throughout the litigation of this case, Class Counsel effectively advanced the positions of the Class. Those efforts include the following:

- Factual investigation, legal research, and preparation of the complaint and amended complaint.

- Exchanging sets of interrogatories, requests to produce documents, and requests for admissions to IQDI.

- Engaging in extensive review of over 350 pages of document production and discovery responses as well as 12 phone recordings from IQDI.

- Sending discovery dispute letters and filing a Motion to Compel, and responding to discovery issued by IQDI.

- Issuing a subpoena duces tecum to Draper & Kramer, Inc. ("D & K") and reviewing over 2600 pages of documents produced.

- Noticing depositions of both IQDI and D & K.

2

- Participating in settlement negotiations, including drafting a position paper for and attending a judicial settlement conference.

**B. Plaintiff and her counsel's efforts led to an excellent settlement for the class.**

The agreed settlement fund of $11,200.00 is to be used by the Settlement Administrator for settlement checks in equal amounts to each of the 39 class members who has been located and have not elected to opt out. In addition, with assistance from D & K, IQDI has agreed to reduce any class member's existing balances to strip out any of D & K's attorney's fees, and to furnish updated balances to any and all credit reporting agencies to reflect the reduced amount. In addition, if there is a negative balance or overpayment reflecting that the class member paid the prohibited attorney's fees, then IQDI will issue refund payments, subject to a floor of $10.00.

### III. Argument for Reasonable Attorney's Fees

**A. Plaintiff's Counsel are Entitled to an Award of Reasonable Attorneys' Fees and Costs**

The FDCPA provides for a mandatory award of reasonable attorney's fees and costs to a prevailing Plaintiff's counsel. 15 USC 1692k(a)(3); *Zagorski v. Midwest Billing Servs.*, Inc., 128 F.3d 1164, 1166 (7th Cir. 1997) ("the award of attorney's fees to plaintiffs for a debt collector's violation of 'any provision' of the FDCPA is mandatory); *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995). A party who prevails under the FDCPA is entitled to reasonable attorney's fees and costs. *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009); *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 338 F.Supp.3d 729 (N.D. Ill. 2018).

**B.** Standard for Determination of Reasonable Attorneys' Fees  District courts have wide discretion to determine what constitutes reasonable attorney's fees. *Paz v. Portfolio*

3

*Recovery Associates*, LLC, 924 F.3d 949, 954 (7th Cir. 2019). There is no specific formula for determining a reasonable fee under the FDCPA but courts typically use a two-step lodestar calculation.

First, the lodestar amount is calculated by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended by the attorney. Such a calculation "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Second, the attorneys adjust that number to account for factors such as "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation" to ensure that the final fee amount is, in fact, reasonable. *Paz v. Portfolio Recovery Associates*, LLC, 924 F.3d at 954; *Tolentino v. Friedman*, 46 F.3d 645, at 652; *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 338 F.Supp.3d 729 at 732; see also *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The most important of these factors in determining the reasonableness of a fee award is the degree of success obtained. *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992); *Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d at 1166.

### 1. Calculating the Lodestar Amount

By multiplying their hourly rates by the time spent on litigation, class counsel calculates a lodestar in this case of $146,106.25. The hourly rates and amount of time spent on litigation determined by class counsel are reasonable, as discussed below.

### a. Class Counsel's Hourly Rates Are Reasonable

Class Counsel possesses a great deal of knowledge and has diverse experience including civil litigation, class action litigation including FDCPA cases, and public

4

interest law. The requested rates of $295, $525, and $595 are reasonable for Attorneys Charlton, Stark, and Delbaum, respectively, considering their years of experience, expertise, and the relation to the market rate for attorneys in the area with similar experience levels. *See, e.g., West v. Credit Control Services, Inc.*, 2017 WL 4938405 (N.D. Ill. Oct. 30, 2017) (awarding requested rates of $595/hour and $585/hour for partners, $295/hour for associate, and $210/hour for paralegals); *Jacobson v. Persolve, L.L.C.*, 2016 WL 7230873 (N.D. Cal. Dec. 14, 2016) (awarding contested attorney fees based on hourly rates of $500 and $600 for experienced attorneys); *Castro v. Lloyd & McDaniel*, P.L.C., 2016 WL 5110046 (S.D. Ind. Sept. 19, 2016) (approving $575/hour for 25+ year attorney with extensive experience with FDCPA class actions, $275/hour for associate, and $200/hour for paralegal); *Harlan v. Transworld Sys., Inc.*, 2015 WL 505400 (E.D. Pa. Feb. 6, 2015) ($620 an hour for experienced partner and $305 an hour for associate). Further, reasonable attorney fees, albeit sometimes at a lower rate, are also generally awarded for the time expended in obtaining fees through the preparation of a fee application and related proceedings. *Comm'r v. Jean*, 496 U.S. 154, 110 S. Ct. 2316, 110 L. Ed. 2d 134 (1990); *Quality C.A.T.V., Inc. v. N.L.R.B.*, 969 F.2d 541, 547 (7th Cir. 1992) (prevailing party is presumptively entitled to an award that includes costs associated with fee litigation).

Mary Frances Charlton was retained by Ms. Lamar in 2019, and initiated this case with the assistance of the National Consumer Law Center in January, 2020, while an attorney at the Law Project of the Chicago Coalition for the Homeless ("CCH"). She left CCH in April of 2021. Mary Frances Charlton has practiced law for over seven years, one of which was devoted almost entirely to class FDCPA claims with the law firm of

Edelman, Combs, Latturner & Goodwin, LLC in Chicago, Illinois. While an attorney at CCH, she represented youth experiencing homelessness in a variety of legal matters, including consumer rights issues. (*See* Charlton Declaration attached hereto as Exhibit C). Plaintiff submits that a reasonable hourly rate for Attorney Charlton's time is $295.

Arturo Hernandez, an attorney at CCH has been working on this case from its inception but has not billed for his time. Arturo Hernandez has been a staff attorney at CCH since May of 2019. While at CCH, Mr. Hernandez has been counsel of record in five federal actions. Prior to joining CCH, Mr. Hernandez spent several years as a Staff Attorney with the Chicago Legal Clinic, Inc. (CLC). His experience at CLC included providing representation to clients in mortgage foreclosure cases. He also served as appointed counsel to indigent parolees in parole revocation administrative proceedings. (*See* Hernandez Declaration Dkt. # 91-6).

Attorney Charlton and Attorney Hernandez elected to co-counsel this matter with Andrea Bopp Stark and Charles Delbaum of the National Consumer Law Center ("NCLC") because of their knowledge and experience in litigating matters involving violations of the FDCPA and class actions. Andrea Bopp Stark of the National Consumer Law Center (NCLC) has engaged in civil litigation for over twenty years in Massachusetts, New Hampshire, and Maine. From 2008 to 2019, Stark practiced at the Molleur Law Office in Biddeford, Maine where she was lead counsel on over 50 complex consumer litigation matters. Since joining NCLC in June 2019, Stark has focused on fair debt collection issues and is a contributing author to the National Consumer Law Center's treatises on Fair Debt Collection, Mortgage Lending, Mortgage Servicing and Loan Modifications, and Home Foreclosures. (*See* Stark Declaration, attached hereto as

6

Exhibit A). Plaintiff submits that a reasonable hourly rate for Attorney Stark's time is $525.

Charles Delbaum of the National Consumer Law Center is a litigator with forty-nine years of experience. Since joining the National Consumer Law Center in December of 2005, he has been counsel in more than forty consumer class action cases, the majority of which have achieved court-approved settlements. Of these, five were brought under the FDCPA; he is also counsel in three other pending FDCPA class actions. He is co-author of the National Consumer Law Center's Consumer Class Actions manual and of the litigation chapter in the National Consumer Law Center's treatise on Fair Debt Collection. (See Delbaum Declaration, attached hereto as Exhibit B). Plaintiff submits that a reasonable hourly rate for Attorney Delbaum's time is $595.

### b. *Class Counsel Expended a Reasonable Amount of Time on this Matter*

As outlined in the accompanying Declarations and as supported by the billing records, there was a clear delineation of tasks in this matter between counsel to the extent feasible and care was taken to eliminate from the time records any work that could be interpreted as administrative. Class Counsel have spent 302.95 attorney hours evaluating, preparing and litigating this case since August 2019. *See* Exhibit A: Declaration of Andrea Bopp Stark; Exhibit B-: Declaration of Charles Delbaum; Exhibit C- Declaration of Mary Frances Charlton. Counsel did not include the time of other attorneys from NCLC and CCH whose involvement was minimal.

Counsel have preemptively removed entries for work done that may have been considered duplicative or administrative as affirmed in their Declarations and have reduced their hourly rate for attorney hours of "non-core" work, i.e, the preparation of the fee motion, declarations and billing records.

7

With 79.95 hours at a rate of $295, Attorney Charlton billed $23,585.25 in fees. With 120.5 hours at a rate of $525 and an additional 3.5 hours spent on this motion at a reduced rate of $262.50, Attorney Stark billed $64,181.25 in fees. With 97.1 hours at a rate of $595 and 1.9 hours spent on this motion at a reduced rate of $297.50, Attorney Delbaum billed $58,339.75. This amounts to a total lodestar of $146,106.25. While Attorney Hernandez incurred several hours in assisting with the ongoing litigation and drafting this motion and the Motion for Final Approval, we are not including his time in this calculation.

### 2. Adjusting the Lodestar to Request a Reasonable Fee

Class counsel adjusts its lodestar amount of $146,106.25 to $65,000, which is approximately 44% of the total fees incurred. This adjusted lodestar is more than reasonable considering the moderate complexity of the case, the degree of success they obtained, and the public interest advanced by the litigation. The reasonability of this fee is further supported because the requested award fulfills the legislative requirements and purpose of the FDCPA and there have been no objections from the class.

### a. *The Attorney's Fees Are Reasonable in Light of the Moderate Complexity of the Legal Issues Involved*

This matter involved violations of a Chicago Ordinance that prohibits the collection of attorneys' fees in connection with evictions when such fees were not awarded by the court, and an analysis of whether seeking to collect such fees constituted violations of the Fair Debt Collection Practices Act. Specifically, this case involved evaluation, interpretation, and application of Chicago Mun. Code Ch. 5-12-180 to the facts of this matter along with a thorough evaluation and determination that a violation of the ordinance also was a violation of several sections of the FDCPA: 15 U.S.C. §§1692d,

8

1692e and 1692f. It was also difficult to determine from available records when such fees were sought or collected, which is why Draper and Kramer remained a vital part of litigating this matter even after it was dismissed as a defendant. The bona fide error defense under 15 U.S.C. §1692k(c) presented the contentious and unsettled question of when may a debt collector rely on assurances of the creditor that the amounts sought are truly and legally owed. Additionally, the Plaintiff engaged in extensive efforts to evaluate, re-evaluate, and support the legal claims alleged in the Amended Complaint.

      b.    *The Attorney's Fees are Reasonable Considering the Degree of Success Obtained*

To determine the level of success obtained, the Court uses a three-part test: 1) the difference between the judgment recovered and the recovery sought, 2) the significance of the legal issues on which the plaintiff prevailed and, 3), the public purpose served by the litigation." *Cartwright v. Stamper,* 7 F.3d 106, 109 (7th Cir.1993).

As to the first factor, the judgment in this matter, if entered by this court, will result from a Settlement Agreement that provides for a fund in the amount of $11,200.00. Given that there are 39 class members who can be located and have not elected to opt out, this would result in each class member receiving $287.17 per class member. In addition, class members who paid attorney's fees will be issued a refund, attorney's fees will be removed from the balances of the class members, and updated balances will be sent to credit reporting agencies. In contrast, the *maximum* FDCPA individual statutory recovery is $1,000. 15 U.S.C. §1692k(a). The amount the court would determine is appropriate for class members who were asked to pay, but did not pay, unlawful attorney's fees is purely speculative. One of the factors the court would consider is whether the violation was intentional. 15 U.S.C. §1692k(a). The Motion for Summary Judgment the Defendant

9

filed was predicated on an alleged bona fide error which, even if unsuccessful on the merits, would bear on intentionality. Thus a recovery of $287.17 for each class member, a refund of all actual damages, refund of attorney's fees paid, correction of their balances to remove any attorney's fees and updates to their credit reports should be considered a successful outcome.  In comparison, for example, *Portillo v. Roeser & Vucha, LLC*, a settlement approved by this court in 2019, provided $1,500 towards the class fund with 32 class members, making each member's recovery $46. *Portillo v. Roeser & Vucha, LLC*, 2019 WL 11892381 (N.D.Ill. 2019).

The second and third factors can be addressed together: the significance of the legal issues on which the plaintiff prevailed and the public purpose served by the litigation. This matter was initiated by the Law Project of the Chicago Coalition for the Homeless, a non-profit entity that offers free legal services to low-income clients who are homeless or facing homelessness.  Ms. Lamar came to the Project after receiving communications from a debt collector, IQDI, after being evicted from her home.  Her court documents and invoices from the property manager, D&K, and from IQDI, revealed that they were attempting to collect attorney's fees from her that were connected to her eviction but had not been awarded by the Court.  This violated a Chicago ordinance that prohibits collection of such fees. Upon learning that this was happening to other tenants as well, the Law Project connected with the National Consumer Law Center, a non-profit entity that works for consumer justice and economic security for low-income and other disadvantaged people and litigates consumer class actions around the country, to co-counsel a class action.

10

The Chicago ordinance provides important rights and remedies for tenants. The stated purpose of the ordinance is to "protect and promote the public health, safety and welfare of its citizens, to establish the rights and obligations of the landlord and the tenant in the rental of dwelling units, and to encourage the landlord and the tenant to maintain and improve the quality of housing." Chicago Mun. Code Ch. 5-12-010. Section 180 states that "the prevailing plaintiff in any action arising out of a landlord's or tenant's application of the rights or remedies made available in this ordinance shall be entitled to all court costs and reasonable attorney's fees…" but specifically excludes forcible entry and detainer (eviction) actions unless otherwise awarded by the court or provided for in the ordinance. The council members recognized that eviction actions are unique and defendants need additional protections from the imposition of potentially unreasonable and unchecked attorney's fees. That is what happened to Ms. Lamar- she was charged a "legal fee" of $966.25 that was not awarded by the court, in addition to the rental arrears. (Dkt. #s 1-1, 1-2, 1-3). Since $541.50 of that amount was the court cost amount, Ms. Lamar was being improperly charged for $424.75 in attorney's fees. For tenants who are evicted from their homes, especially those who are low-income, an extra $424.75 is a significant amount of money. A failure to pay this excess amount on top of the rental arrearage can result in negative credit reporting, as happened to Ms. Lamar, which in and of itself hinders obtaining stable housing. The attorney's fees could mean that the tenant will either pay a large sum not actually owed or be unable to afford to pay the debt in full and have a longstanding balance due on the account. By filing this lawsuit, Ms. Lamar put property managers and landlords in Chicago, and the debt collection agencies they use, on notice that they must comply with the Chicago ordinance and not attempt to

11

collect attorney's fees that were not authorized by the Court. The settlement amount and attorney fees awarded should deter violation of this ordinance in the future.

      c. ***The requested award fulfills the legislative requirements and purpose of the FDCPA.***

Awarding Ms. Lamar the fair attorneys' fees that she requests does, in and of itself, serve the substantive purpose of the FDCPA. "Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino v. Friedman*, 46 F.3d 645, 652-53 (7th Cir.)

Thus, awarding the requested attorney's fees makes FDCPA claims more tenable not only for Ms. Lamar, but also for future plaintiffs who want to bring FDCPA claims and need attorneys to undertake them. If Ms. Lamar had to pay her attorney's the market rate of this litigation, she would have been unable to pursue the claim, to her detriment, the detriment of other class members, and the detriment of other evicted tenants who might otherwise be asked to pay attorney fees they do not owe. The Plaintiff has conceded a reasonable amount of the lodestar in an effort to reach agreement with the Defendant. The court's failure to award the reduced request would contravene the legislative intent of the FDCPA.

      d. ***No class member has objected to the requested attorney's fees award***

Settlement Class Members had until June 15, 2021 to object to the Settlement Agreement, and had until June 26, 2021, to opt out of the Settlement Agreement. (*See* Preliminary Approval Order, Dkt # 96). The Notice contained opt-out instructions for Settlement Class Members who wished to be excluded from the Settlement and instructions for how to object. (*See* Dkt # 91-2; Declaration of Dorothy Sue Merryman,

12

Exhibit A to the Motion for Final Approval filed concurrently with this motion). Only one class member has elected to opt out, and no class member has objected to this Settlement Agreement, including the provisions regarding attorney's fees.

### IV. Argument for Incentive Award

A. **Ms. Lamar acted effectively as Class Representative in this action.**

The Settlement Agreement provides for a Class Representative Award to named Plaintiff, Yasmine Lamar in the amount of $2,000.00 for her time and efforts on behalf of the Settlement Class. This award is in addition to the payment to which she is entitled as a class member. While the parties understand that any Class Representative Award is at the discretion of this Court, IQDI has agreed not to challenge the request for an award of $2,000 for Mr. Lamar.

Ms. Lamar met and conferred numerous times with class counsel and actively participated in this litigation. She met with Ms. Charlton to initiate her representation and to discuss a possible class action. Later, she exchanged correspondence and telephone calls when reviewing the proposed complaint. Once the litigation began, there were meetings and correspondence with Ms. Charlton to formulate answers and responses to IQDI's discovery requests. Furthermore, before class settlement negotiations began, she declined defendant's offer of an individual settlement in an amount substantially greater than the award she now requests, thus demonstrating her loyalty to the class. Ms. Lamar also attended the January 25, 2021 class Settlement Conference, actively participated in the decisions concerning the class settlement negotiations, and signed the settlement agreement. (See Charlton Declaration, Dkt. # 91-3).

B. **The requested incentive award is reasonable**

13

Incentive awards "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001); *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 875 (7th Cir. 2012). In deciding whether an incentive award is proper and, if so, in what amount, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

In 2018, this court approved a $5,000.00 incentive award in a Telephone Consumer Protection Act ("TCPA") case because, while the case "did not proceed very far before it settled[,]" the plaintiff "attached his name to the suit, thereby subjecting himself to the risk of discovery and a cost of award where judgment entered against him." *Douglas v. Western Union Co.,* 328 F.R.D. 204, 218-19 (N.D. Ill. 2018). *See also, Gehrich v. Chase Bank United States,* 316 F.R.D. 215 (N.D. Ill. 2016)($1500 award to each of the five class representatives); *Snyder v. Ocwen Loan Servicing, LLC,* 2019 WL 2103379 (N.D. Ill. May 14, 2019) ($10,000 incentive award to each of the named plaintiffs, for a cumulative total of $ 30,000); *Pierre v. Midland Credit Mgmt., Inc.*, 2019 WL 11543193 (N.D. Ill. Dec. 11, 2019)($4,000.00 incentive award for serving as a named plaintiff in an FDCPA case).

Ms. Lamar attached her name to this Lawsuit, assisted with the prosecution of her case at all stages, responded to discovery, and prepared for and attended the class settlement conference. Had she accepted Defendant's offer of an individual settlement

14

she would have received a greater amount, but the class would have received nothing.

Therefore, the facts justify the requested incentive award of $2,000.00.

## V.  Conclusion

For the reasons mentioned above, Class Counsel respectfully requests that the Court award attorneys' fees and costs of $65,000, and $2,000 as an incentive award.

Dated: July 6, 2021

                                                                        Respectfully submitted,

/s/ Arturo Hernandez
Arturo Hernandez
Law Project of the Chicago Coalition for the Homeless
70 E. Lake St. Ste. 720
Chicago, IL 60601
312-641-4140
arturo@chicagohomeless.org


/s/ Andrea Bopp Stark
Andrea Bopp Stark
Charles Delbaum
National Consumer Law Center
7 Winthrop Square
Boston, MA 02110-1245
617-542-8010
astark@nclc.org
cdelbaum@nclc.org

*For the Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2021, I electronically filed the above Plaintiff's Unopposed Motion and Memorandum In Support Of An Award of Attorneys' Fees, Costs, And An Incentive Award with the Clerk of the Court, using the CM/ECF system,

which will provide service of such filing via Notice of Electronic filing (NEF) to all NEF

parties registered with the CM/ECF system.

/s/ Arturo Hernandez
Arturo Hernandez
Law Project of the Chicago Coalition for the Homeless
70 E. Lake St. Ste. 720
Chicago, IL 60601
312-641-4140
arturo@chicagohomeless.org

16